**No. 22-3268, No. 23-1022**

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

F.C. BLOXOM COMPANY doing business as F.C. BLOXOM INTERNATIONAL,

*Petitioner-Appellant,*

v.

TOM LANGE COMPANY INTERNATIONAL doing business as SEVEN SEAS FRUIT,

*Respondent-Appellee.*

F.C. BLOXOM COMPANY doing business as F.C. BLOXOM INTERNATIONAL,

*Petitioner-Appellant,*

v.

JASON LAYE,

*Respondent-Appellee.*

Appeals from the United States District Court for the Central District of Illinois, Nos. 3:20-cv-03147-SEM-KLM, No. 3:22-mc-03005-SEM-KLM
The Honorable Sue E. Myerscough, District Judge

**APPELLANT'S AMENDED[1] MOTION TO STAY EXECUTION OF THE AMENDED JUDGMENT AND TO VACATE ORDER RELEASING $165,000 CASH BOND**

---

[1]Amended only to include Exhibit 5 to the Bloxom Declaration inadvertently omitted from the Motion and the number words in the Certificate of Compliance.

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................i

I.     Short Argument ........................................................................................ 1

II.    Background ............................................................................................... 3

       A.   District Court Proceeding.................................................................. 3

       B.   The Summary Judgment Order ......................................................... 4

       C.   This Appeal ...................................................................................... 6

       D.   The Amended Judgment.................................................................... 7

III.   Legal Standard for Entry of a Stay Pending Appeal........................................ 8

       A.   Bloxom is Likely to Succeed on the Merits...................................... 8

       B.   Bloxom Will Suffer Irreparable Injury Absent a Stay ......................10

       C.   As Stay Will not Substantially Injure Seven Seas .............................11

       D.   The Public Interest Favors a Stay ....................................................13

IV.    Conclusion ............................................................................................... 14

Certificate of Compliance ...........................................................................................16

Certificate of Service ..................................................................................................17

# TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*Hilton v. Braunskill,*
 481 U.S. 770 (1987)................................................................................. 8

*Scripps-Howard Radio, Inc. v. FCC,*
 316 U.S. 4 (1942)................................................................................... 8

**FEDERAL CASES**

*A&F Enters., Inc. II v. IHOP Franchising LLC,*
 742 F.3d 763 (7th Cir. 2014)................................................................. 8

*Lightfoot v. Walker,*
 797 F.2d 505 (7th Cir. 1986)............................................................... 12

**FEDERAL STATUTES**

Title 7 U.S.C.
 § 499g ............................................................................................... 3, 12

**FEDERAL RULES**

Federal Rules of Appellate Procedure
 Rule 8 ............................................................................................... 2, 7
 Rule 27 ............................................................................................. 1, 16
 Rule 32 ................................................................................................ 16

Federal Rules of Civil Procedure
 Rule 56(d) ........................................................................................ 4, 10
 Rule 62 ............................................................................................... 1, 7

**CIRCUIT RULES**
 Rule 8.................................................................................................... 1

## APPELLANT'S MOTION TO STAY EXECUTION OF THE AMENDED JUDGMENT AND TO VACATE ORDER RELEASING $165,000 CASH BOND[2]

In accordance with Fed. R. App. P. 8(a)(2) and 27, Rule 8 of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, along with Fed. R. Civ. P. 62, Appellant F.C. Bloxom Company dba F.C. Bloxom ("Bloxom"), seeks entry of an order staying post-judgment collection of the Amended Final Judgment, directing Appellee to return the $165,000 cash bond posted by Bloxom with the District Court, and vacating the District Court's Order releasing that bond pending the outcome of this Appeal.

### I.  Short Argument

In accordance with Fed. R. App. P. 8, Bloxom duly moved to Stay Enforcement of Judgment and Release of Bond ("Motion") with the District Court. SS Dkt. 118.[3] The District Court failed to deliver a timely and comprehensive ruling on this critical matter. Its erroneous conclusion that the Motion is moot calls for scrutiny by this Court. When rendering its decision, the District Court disregards the significant legal questions raised by Bloxom's requested stay, and the procedural rights at stake. The District Court's text order entered on the docket ("Text Order") is attached as Exhibit A. The District Court denied the Motion as moot because Bloxom's bond was already released yet makes no mention of the stay

---

[2] In accordance with Fed. R. App. P. 8(a)(2)(C) Bloxom provided Appellees with notice of its intent to file this Motion. Appellees did not consent.

[3] The district court docket in *F.C. Bloxom v. Seven Seas*, as "SS Dkt. _" and the district court docket in *F.C. Bloxom v. Laye* as "JL Dkt. _."

sought by Bloxom. It states:

> On September 28, 2023, the Court entered an order directing the Clerk pay the $165,000 cash bond to Defendant Seven Seas in the amounts set forth in the Amended Judgment. (d/e 116). On October 2, 2023, Plaintiff filed a Motion to Stay Enforcement of Judgement and Release of Bond. (d/e 118). Pursuant to Local Rule 7.1 responses to motions are due within 14 days. On October 16, 2023, Defendant filed a Memorandum in Opposition to Plaintiffs Motion to Stay, and within the 14-day window (d/e 119). Sometime thereafter, the Court was informed that the distribution of the $165,000 bond was indeed disbursed on October 11, 2023, during the pendency of the 14-day response period. **Given the disbursement of said funds, Defendant's [sic] Motion for Stay (d/e 118) is DENIED as MOOT. Of additional note, this case remains ongoing in the Seventh Circuit Court of Appeals, which heard oral argument in this matter and has taken the parties [sic] briefs and arguments under advisement.**

Emphasis added. The Text Order is fundamentally flawed because it (a) misidentifies the movant as Defendant/Appellee Seven Seas and (b) fails to rule on Bloxom's motion to stay the execution of the Amended Judgment pending the outcome of this appeal. This purported "oversight" by the District Court is significant because it also demonstrates a pattern by the District Court of failing to fully address Bloxom's filings before it, then denying those motions as moot – the very same flawed rationale that gives rise to the instant appeal. In short, this appeal seeks reversal and remand of an order denying as moot *fourteen* pending motions that lingered for months (including motions seeking basic discovery from Appellees), and entering summary judgment for Appellee Tom Lange Company International dba Seven Seas Fruit ("Seven Seas"). Bloxom now brings this Motion in accordance with Fed. R. App. P. 8(a)(2)(A)(ii).

## II. Background

### A. District Court Proceeding

1.      The proceedings before the District Court originated as an appeal of a decision issued by the Secretary of the United States Department of Agriculture ("U.S.D.A.") in favor of Seven Seas. SS Dkt. 1. That decision relies on one piece of evidence – an affidavit signed by Seven Seas' employee Jason Laye, and follows a procedure that does not afford the benefit of any discovery. SS Dkt. 90-12, pgs. 21, 25.

2.      Although Mr. Laye walked out of the deposition taken during the District Court proceedings, his limited testimony included an admission that the affidavit was false. SS Dkts. 70, 71-08; JL Dkts. 6, 6-18. The importance of that admission cannot be overstated because it renders the U.S.D.A.'s decision void.

3.      In appealing the U.S.D.A. decision to the District Court, Bloxom needed to post a bond under 7 U.S.C. § 499g(c). It posted a $165,000 cash bond with the Clerk of the District Court. SS Dkt. 05.

4.      Bloxom's appeal of the U.S.D.A. decision entitled it to a trial *de novo*, and the benefits of conducting discovery. 7 U.S.C. § 499g. Bloxom's efforts to obtain basic and fundamental discovery from Seven Seas and Mr. Laye[4] were repeatedly met with brazen disregard by both of the discovery process, which the District Court

---

[4] Bloxom filed a separate action against Mr. Laye seeking enforcement of three subpoenas that he was served with, two of which he never objected to. JL Dkt. 6. The Motion for Sanctions in that case languished for nearly six months until the District Court denied that as Moot.

condoned by its failure to rule on Bloxom's motions seeking discovery from Appellees.

5.      Despite Mr. Laye unilaterally ending his deposition and refusing to return or comply with three subpoenas served by Bloxom, Seven Seas filed a Motion for Summary Judgment three months before the close of discovery. SS Dkt. 50; JL Dkt. 6. It then moved to stay discovery, and stonewalled all discovery sought after its Motion for Summary Judgment was filed. SS Dkt. 59.

6.      The District Court's inaction on Appellee Seven Seas' Motion to Stay Discovery for nearly six months effectively sanctioned Mr. Laye's refusal to complete his deposition and Seven Seas' refusal to comply with an order compelling the production of discovery to Bloxom, along with other abuses. SS Dkt. 57, 79, 80; JL Dkt. 6..

**B.  The Summary Judgment Order**

7.      The District Court entered an order granting Seven Seas' Motion for Summary Judgment seven months after the Motion was filed. At the time the Summary Judgment Order was entered, there were ten[5] pending motions related to discovery, including four motions to compel discovery and two motions seeking relief under Fed. R. Civ. P. 56(d), the earliest of which had been pending for over six months. SS Dkts. 57, 59, 78, 79, 80, 92, 93, 94, 95; JL Dkt. 6.

---

[5] For the purposes of this Appeal, Bloxom's Motion does not address the District Court's denial of motions that were exclusively procedural in nature and that did not impact the outcome before the District Court. These are SS Dkt. 75, 84, 85, and 92.

8. The District Court entered a sweeping denial of all pending motions, tacitly permitting Appellees to withhold the very discovery Bloxom needed to oppose the Motion for Summary Judgment.

9. The District Court also delayed docketing and serving the Summary Judgment Order by five days, in an apparent purposeful effort to harm Bloxom by shortening the time for it to initiate this appeal of that Order. SS Dkt. 101.

10. The District Court's prejudice against Bloxom is further evidenced by its failure to rule on Bloxom's separate action against Mr. Laye seeking sanctions for his refusal to comply with three subpoenas. For nearly six months, Bloxom waited for the District Court to rule. Instead, twenty days after entering the Summary Judgment Order, the District Court entered a Text Order stating "…for the reasons stated in the Order granting summary judgment in favor of Seven Seas … the relief requested by the Petitioner in this case is moot." See Exhibit B.

11. These rulings mirror the District Court's precipitous Text Order denying Bloxom's Motion, which evades any legal or factual analysis of the stay sought by Bloxom, carelessly misidentifies the movant as Seven Seas and finds that the disbursement of Bloxom's bond somehow renders its request for a stay moot. See Exhibit A.

12. Because of the District Court's refusal to rule on motions seeking judicial intervention in the enforcement of cooperation with discovery requests, its refusal to enforce compliance with an order from January 2022 SS Dkt. 31, 33, and the discovery of a work history between the judge and counsel for Seven Seas,

Bloxom sought recusal of the District Court judge. SS Dkt. 66. The District Court judge refused to recuse herself and as shown by the Opinion and Order refused to rule on any of the pending motions related to discovery. SS Dkts. 82 and 101.

13.   The District Court's penchant for sweeping and delayed text orders denying Bloxom's motions lie unlike its detailed, five-page Order analyzing and denying Bloxom's Motion to Recuse the Magistrate and District Court Judges based on an undisclosed relationship between both and counsel for Seven Seas. SS Dkt. 82.

**C. This Appeal**

14.   Bloxom's Notice of Appeal of the Summary Judgment Order was filed on December 16, 2022. SS Dkt. 103.

15.   As detailed in Bloxom's Brief and Reply Brief, the Summary Judgment Order must be reversed and remanded. In short, the District Court erred by failing to rule on any of the ten pending discovery related motions, relying on inadmissible evidence and overlooking the disputed issues of fact in its factual findings.

16.   The record documents Bloxom's numerous attempts to postpone the decision on the Motion for Summary Judgment. These attempts were made along with Bloxom's diligent pursuit of essential discovery.

17.   Bloxom provided unequivocal evidence of perjury and the production of altered documents by Seven Seas and Mr. Laye. These actions collectively underscore how far Bloxom has gone to uncover and present the truth in the face of obstruction. SS Dkt. 71-08, 71-27; JL Dkt. 6.

18.   Notably absent from the Summary Judgment Order is any

acknowledgment or analysis about how Mr. Laye's admitted perjury in his affidavit, the single document relied upon by the U.S.D.A., resembles the Order affirming that decision. SS Dkt. 101. It also avoids the effect of Bloxom's inability to confirm claims and challenge the veracity of the evidence presented by Appellees because of incomplete depositions and withheld discovery by Appellees.

**D. The Amended Judgment**

19.    In December 2022, Seven Seas sought entry of a "supplemental judgment" awarding it attorneys' fees, costs and interest. SS Dkt. 104. Over nine months later, the District Court granted that motion. SS Dkt. 115.

20.    The District Court also entered another Text Order instructing the Clerk of Court to disburse the $165,000 cash bond posted by Bloxom to Seven Seas. SS Dkt. 116. Seven Seas was ordered to provide payment instructions to the Clerk of Court within three business days. SS Dkt. 116. The Amended Judgment awards damages to Seven Seas in the total amount of $484,588.60. SS Dkt. 117.

21.    On October 2, 2023, **one day before the cash bond was to be disbursed,** Bloxom filed a Motion in accordance with Fed. R. Civ. P. 62 and Fed. R. App. P. 8 asking the District Court to enter an order staying enforcement of the Amended Judgment and vacating the release of the $165,000 cash bond posted by Bloxom. SS Dkt. 118.

22.    Seven Seas' Opposition was filed on October 16, 2023. SS Dkt. 119. That Opposition did not mention its receipt of the cash bond. Indeed, until the Text Order, Bloxom was the only party without notice that the $165,000 cash bond was long ago disbursed to Seven Seas.

23.    The District Court's decision denying the Motion as moot without addressing or resolving Bloxom's Motion to Stay represents a significant procedural irregularity. Moreover, the District Court's apparent dismissal of the substantive issues potentially raised in Seven Seas' last-minute Opposition suggests a predetermined judgment rather than a balanced consideration of the merits. This flawed ruling both undermines procedural safeguards and casts doubt on the impartiality of the judicial process.

### III.    Legal Standard for Entry of a Stay Pending Appeal

The District Court and this Court are vested with the authority to stay the enforcement of a judgment pending the outcome of an appeal. *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942). In determining whether to enter an order staying an order pending an appeal, the court must consider four factors:

> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) Whether the applicant will be irreparably injured absent a stay;
>
> (3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) Where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Each factor favors granting Bloxom's instant Motion to Stay.

### A.  Bloxom is Likely to Succeed on the Merits

When considering whether to grant a stay pending an appeal, the goal is to minimize the costs of error. *A&F Enters., Inc. II v. IHOP Franchising LLC,* 742 F.3d 763, 766 (7th Cir. 2014). Stays are necessary to mitigate the damage that can be

done during the period before a legal issue is finally resolved on its merits. *A&F*, 742 F.3d at 766. A sliding scale applies, and the more likely a party is to be successful on the merits, the less heavily the balance of harms weighs in its favor, and vice versa. *Id.*

The Summary Judgment Order is fundamentally flawed in that it affirms the findings of the U.S.D.A., while also depriving Bloxom of the discovery necessary to refute those findings,[6] in utter disregard of the fundamentals of legal due process. Appealing the U.S.D.A. decision to the District Court conferred upon Bloxom the right to a trial *de novo*. While Bloxom diligently and persistently pursued discovery, Seven Seas and Mr. Laye coordinated a shell game designed to deprive Bloxom the essential discovery needed to oppose the Motion for Summary Judgment and challenge the U.S.D.A. decision. Along with Mr. Laye's admittedly perjured affidavit, Seven Seas also produced screenshots of critical text message communications from Mr. Laye. These screenshots appear to have been deliberately altered in an apparent effort by Mr. Laye to conceal his deceptive practices in his dealings with Bloxom from his employer Seven Seas. Dkt. 71-27. Despite repeated attempts, the Appellees obstructed all efforts to complete Mr. Laye's deposition. Moreover, the District Court failed to rule on Bloxom's pending motions, neglecting Bloxom's reiterated requests to complete the discovery process prior to the issuance

---

[6] Bloxom did not receive complete responses to three separate requests for production, two sets of interrogatories, one request for admissions, and four subpoenas seeking the deposition along with production of documents and ESI from Mr. Laye. SS Dkts. 57, 79, 80, 92; JL Dkt. 6

of the Summary Judgment Order.

Additionally, the nature and extent of the discovery sought by Bloxom underscores the importance of the depositions that could not be completed due to the inaction of the District Court. Bloxom's Opposition to Seven Seas' Motion for Summary Judgment detailed why Rule 56(d) requires the District Court to deny or delay in ruling on that motion, highlights that contradiction between Mr. Laye's affidavit and his limited deposition testimony, and details the multitude of disputed issues of material fact sufficient to rebut the U.S.D.A.'s findings. SS Dkt. 71. The District Court abused its discretion by failing to rule on the pending discovery motions before entering the Summary Judgment Order, depriving Bloxom of the very discovery needed to oppose Seven Seas' Motion for Summary Judgment.

The District Court, in a striking oversight, chose to ignore Bloxom's diligent efforts to secure key and reliable discovery. Despite clear evidence of perjury and other discovery misconduct, the District Court deemed these matters irrelevant by summarily dismissing them as moot after granting Seven Seas' Motion for Summary Judgment.

Bloxom's demonstrable and substantial likelihood of success on the merits of the instant appeal favor granting this Motion to Stay.

## B. Bloxom Will Suffer Irreparable Injury Absent a Stay

The second factor this Court must consider is whether Bloxom will suffer irreparable injury without the requested stay. By denying the Motion to Stay, even after noting that briefing and oral argument are complete, and that the parties are

simply waiting for a decision from this Court, the District Court opened the door to allow Seven Seas to try to collect on the Amended Judgment. No legal barrier prevents Seven Seas from initiating collection proceedings on the $319,588.60 balance under the amended judgment. Having waited months for a ruling on the Motion to Stay filed with the District Court, permitting collection proceedings in light of the pending ruling will cause irreparable injury to Bloxom. In particular, if this case is remanded, the District Court has divested itself of jurisdiction over Bloxom's appeal of the U.S.D.A.'s decision by releasing the cash bond to Seven Seas. *Sun Valley Farms, LLC v. W. Veg Produce, Inc.*, 536 F. Supp. 3d 668, 672 (E.D. Cal. 2021) (explaining that failing to post the requisite bond "is a jurisdictional defect that requires the dismissal of a § 499g(c) appeal").

The Text Order denying the Motion to Stay as moot echoes the Summary Judgment Order summarily and inexplicably denying all pending motions (including motions seeking discovery withheld by Seven Seas) as moot. The District Court has shown a pattern of shirking its responsibilities in ruling on motions seeking judicial intervention and is problematic.

Finally, based on the Court-sanctioned refusal to produce basic discovery from Seven Seas, the District Court will not likely assist Bloxom in recovering the $165,000 cash bond if Seven Seas is not ordered to return it by this Court pending a decision on the Appeal.

## C. A Stay Will Not Substantially Injure Seven Seas

Under Fed. R. Civ. P. 62(d), the Seventh Circuit has consistently held that a

plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to ensure that the judgment will be paid if it is affirmed. *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986). This underscores the equitable consideration that supports granting a stay pending appeal, provided the appellant has furnished adequate security to ensure the judgment's fulfillment if the appeal fails. *Lightfoot,* 797 F.2d at 506-07.

Bloxom has already satisfied this factor, as well as 7 U.S.C. § 499g by depositing the $165,000 cash bond at the outset of litigation. As a result, it has already taken the 'reasonable steps' mandated by Rule 62(d) to safeguard the judgment's satisfaction.

Moreover, the judgment here has little, if any impact on a company the size of Appellee Seven Seas. This Motion relies on the supporting Declaration of Bloxom's corporate officer, William F. Bloxom attached as Exhibit C. Mr. Bloxom's Declaration includes third party reports from the Blue Book Services ("Blue Book"), a company that serves as a clearinghouse for financial, operational, and other key information about companies that buy and sell produce, along with industry news and information. Bloxom Declaration, ¶¶ 4-5. Notably, Appellee has ten times the creditworthiness of Bloxom. Bloxom Declaration, ¶¶ 8 -9. Consequently, imposing a stay on the enforcement of the Amended Judgment while awaiting the appeal's resolution will not financially burden Seven Seas.

**D. The Public Interest Favors a Stay**

The instant appeal was filed in 2022, and oral argument took place in late October, 2023. The parties are now awaiting a decision. Instituting a stay pending the appeal's resolution will not only preserve the current state of affairs, but will also significantly serve the public interest. The Summary Judgment Order can create widespread uncertainty within the produce industry by setting precedent that one party's interpretation of an unwritten contract can be enforced by a court without a trial and crucially, without granting the other party a fair chance at essential discovery, especially when such discovery has been obstructed by the party moving for summary judgment. A stay pending resolution of this appeal is not merely a procedural step; it is a measure that safeguards the current legal landscape, inherently benefiting the public interest.

The U.S.D.A. decision that Bloxom appealed to the District Court was based *only* on the perjured affidavit of Mr. Laye. The District Court's a flawed decision based on admitted perjury underscores a critical concern for the integrity of judicial proceedings and the enforcement of just outcomes in our legal system. Moreover, the allegations of evidence tampering by Mr. Laye further escalate the matter beyond a simple legal dispute to a question of public trust and the ethical standards governing our courts and commerce. A stay, therefore, serves a dual purpose: it prevents the premature enforcement of a judgment deeply tainted by admitted falsehoods, and it underscores the judiciary's commitment to fairness, transparency, and the unwavering pursuit of truth.

In this context, a stay is not just a protective measure for the parties involved but a testament to the broader values that underpin our legal and societal framework. It affirms the principle that the mechanisms of justice must not be expedited at the expense of accuracy and fairness, especially when public confidence in the judicial process is at stake. Public interest favors a stay prohibiting Seven Seas from efforts to liquidate a judgment premised entirely on admitted perjury. This, coupled with the alleged adulteration of evidence by Mr. Laye is of public importance and favors the requested stay.

## IV. Conclusion

The balance of factors in consideration for a stay pending appeal overwhelmingly supports granting Bloxom's instant Motion to Stay. The District Court's consistent pattern of delay and inaction precipitated this appeal, as well as this Motion. Its reluctance to take timely action and its concurrent tendency to allow legal matters to proceed without judicial oversight, ultimately lading to the of motions as moot, in direct defiance of its critical function upholding basic principles of justice. As a result, Bloxom has been deprived of the equitable legal process it is entitled to, establishing a perilous precedent that threatens the rights and fair treatment of current and future litigants alike.

It is imperative, therefore, that this Court intervene without delay to prevent further prejudice against Bloxom and to avert the continuation of a precedent that undermines the integrity of the judicial process for others in comparable circumstances. For all these reasons, this Court should grant Bloxom's request for Stay.

WHEREFORE, Bloxom respectfully requests that this Court order Seven Seas to return the $165,000 cash bond, vacate the Order releasing the $165,000 cash bond, and stay the execution of the amended judgment pending the outcome of this appeal, along with any other relief that this Court may deem just.

Respectfully submitted on March 4, 2024, on behalf of Appellant Bloxom Company.

/s/ *Katy Koestner Esquivel*
Katy Koestner Esquivel
ESQUIVEL LAW, CHARTERED
2335 Tamiami Trail North
Suite 301
Naples, FL 34103-4457
Telephone: (239)206-3731
kke@esquivel-law.com

Michael J. Connick
MICHAEL J. CONNICK CO., LPA
45 N. 4th Street, Suite 2B
Zanesville, OH 43701
Telephone: (216)924-2010
mconnick@mjconnick.com

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P.27(d)(2)(A) and Circuit Rule 32, because this document contains 4,011 words, excluding accompanying documents authorized by Rule 27(a)(2)(B).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in 12-point Century Schoolbook style font.

Dated: March 4, 2024.

*/s/ Katy Koestner Esquivel*
Katy Koestner Esquivel
One of the Attorneys for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, the Motion to Stay was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Katy Koestner Esquivel*
Katy Koestner Esquivel

# Exhibit A

34,36,APPEAL,CLOSED,REFER,RULE 16 CONFERENCE HELD
# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:20-cv-03147-SEM-KLM

F.C. Bloxom Company v. Tom Lange Company International, Inc.
Assigned to: Judge Sue E Myerscough
Referred to: Magistrate Judge Karen L. McNaught
 Case in other court:  Seventh Circuit, 22-03268
Cause: 07:499 Agricultural Commodities Act

Date Filed: 06/12/2020
Date Terminated: 11/22/2022
Jury Demand: None
Nature of Suit: 891 Agriculture Acts
Jurisdiction: Federal Question

**Plaintiff**

| **F.C. Bloxom Company** | represented by | **Michael J Connick** |
|---|---|---|

**F.C. Bloxom Company**
*doing business as*
F.C. Bloxom Company International

represented by  **Michael J Connick**
MICHAEL J CONNICK CO LPA
301 Main Street
Suite H
Zanesville, OH 43701
216-924-2010
Email: mconnick@mjconnick.com
*ATTORNEY TO BE NOTICED*

**Katy K Esquivel**
ESQUIVEL-LAW CHARTERED
Suite 301
2335 Tamiami Trail North
Naples, FL 34103
239-206-3731
Fax: 239-431-3942
Email: kke@esquivel-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tom Lange Company International, Inc.**
*doing business as*
Seven Seas Fruit

represented by  **John P Amato , Sr**
THOMPSON COBURN HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022
212-478-7380
Fax: 212-478-7200
Email: jamato@thompsoncoburn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence H Meuers**
MEUERS LAW FIRM
5395 Park Central Court
Naples, FL 34109-5932
239-513-9191
Fax: 239-513-9677
Email: lmeuers@meuerslawfirm.com
*TERMINATED: 02/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erik Philip Lewis , I**
THOMPSON COBURN LLP
Suite 300
525 West Main Street
Belleville, IL 62220

618-277-4700
Fax: 618-236-3434
Email: elewis@thompsoncoburn.com
*ATTORNEY TO BE NOTICED*

**Miscellaneous Party**

**Jason Laye**
Carlton Fields
700 Northwest 1st Avenue
1200
Miami, FL 33136
United Sta
3055304058

represented by **Vanessa Singh Johannes**
CARLTON FIELDS
Suite 1200
2 MiamiCentral
700 NW 1st Avenue
Miami, FL 33136
305-539-7358
Fax: 305-530-0055
Email: vjohannes@carltonfields.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/20/2024 | | TEXT ORDER entered by Judge Sue Myerscough on 2/20/2024: On September 28, 2023, the Court entered an order directing the Clerk pay the $165,000 cash bond to Defendant Seven Seas in the amounts set forth in the Amended Judgment. (d/e 116 ). On October 2, 2023, Plaintiff filed a Motion to Stay Enforcement of Judgement and Release of Bond. (d/e 118 ). Pursuant to Local Rule 7.1 responses to motions are due within 14 days. On October 16, 2023, Defendant filed a Memorandum in Opposition to Plaintiffs Motion to Stay, and within the 14-day window (d/e 119 ). Sometime thereafter, the Court was informed that the distribution of the $165,000 bond was indeed disbursed on October 11, 2023, during the pendency of the 14-day response period. Given the disbursement of said funds, Defendant's Motion for Stay (d/e 118 ) is DENIED as MOOT. Of additional note, this case remains ongoing in the Seventh Circuit Court of Appeals, which heard oral argument in this matter and has taken the parties briefs and arguments under advisement. (JMB) (Entered: 02/20/2024) |

# Exhibit B

34,36,APPEAL,CLOSED,REFER,TRANSF

## U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:22−mc−03005−SEM−KLM

F.C. Bloxom Company v. Laye
Assigned to: Judge Sue E Myerscough
Referred to: Magistrate Judge Karen L. McNaught
Case in other court:  Florida Southern, 0:22−mc−61006
                   Seventh Circuit, 23−01022

Cause: motcomp

Date Filed: 06/16/2022
Date Terminated: 12/06/2022
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**F.C. Bloxom Company**
*doing business as*
F.C. Bloxom International

represented by **Michael J Connick**
MICHAEL J CONNICK CO LPA
301 Main Street
Suite H
Zanesville, OH 43701
216−924−2010
Email: mconnick@mjconnick.com
*ATTORNEY TO BE NOTICED*

**Katy K Esquivel**
ESQUIVEL−LAW CHARTERED
Suite 301
2335 Tamiami Trail North
Naples, FL 34103
239−206−3731
Fax: 239−431−3942
Email: kke@esquivel−law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jason Laye**

represented by **Vanessa Singh Johannes**
CARLTON FIELDS
Suite 1200
2 MiamiCentral
700 NW 1st Avenue
Miami, FL 33136
305−539−7358
Fax: 305−530−0055
Email: vjohannes@carltonfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/06/2023 | 23 | NOTICE of Docketing Record on Appeal from USCA re 20 Notice of Appeal filed by F.C. Bloxom Company. USCA Case Number 23−1022 (JRK) (Entered: 01/20/2023) |
| 01/05/2023 | 22 | Short Record of Appeal Sent to US Court of Appeals regarding 20 Notice of Appeal (ANW) (Entered: 01/05/2023) |
| 01/05/2023 | 21 | DOCKETING STATEMENT by F.C. Bloxom Company re 20 Notice of Appeal (Esquivel, Katy) (Entered: 01/05/2023) |
| 01/05/2023 | 20 | NOTICE OF APPEAL as to Order,,,,,, Terminate Motions,,,,, by F.C. Bloxom Company. Filing fee $ 505, receipt number AILCDC−4104550. (Esquivel, Katy) (Entered: 01/05/2023) |

| 12/06/2022 | | TEXT ORDER Entered by Judge Sue E. Myerscough on 12/6/22. Petitioner F.C. Bloxom Company filed this case in the Southern District of Florida moving to compel Respondent Jason Laye's compliance with subpoenas, compel forensic examination of Respondent Layes phone, for Respondent Laye to show cause why he should not be held in contempt for failure to comply with the subpoena, and for sanctions against Respondent Laye [1, 6]. Respondent Laye is an employee of Seven Seas, Defendant−Appellee in Case Number 20−cv−3147, wherein F.C. Bloxom Company sought appellate review of a proceeding before the United States Department of Agriculture. Petitioner describes Respondent Laye as a nonparty witness in that case. On June 16, 2022, the Southern District of Florida transferred this case to this Court in order to avoid case−management disruptions in Case Number 20−cv−3147. See Doc. No. 18. Because the Court found that further discovery was unnecessary in Case Number 20−3147 and for the reasons stated in the Order granting summary judgment in favor of Seven Seas in Case Number 20−cv−3147, the relief requested by the Petitioner in this case is moot. Therefore, the Clerk is DIRECTED to terminate the Petitioners motion to compel 1 and amended motion to compel 6 and close this case. (ANW) (Entered: 12/06/2022) |
| 06/17/2022 | 19 | Case transferred in from District of Florida Southern; Case Number 0:22−mc−61006. . (Entered: 06/17/2022) |
| 06/16/2022 | | Civil Case Terminated per DE#18. Closing Case. (scn) (Entered: 06/16/2022) |
| 06/16/2022 | 18 | ORDER TRANSFERRING PROCEEDING TO CENTRAL DISTRICT OF ILLINOIS. Signed by Magistrate Judge Jared M. Strauss on 6/16/2022. *See attached document for full details.* (scn) (Entered: 06/16/2022) |
| 06/14/2022 | 17 | RESPONSE to Motion re 6 Amended MOTION to Compel *Compliance With Subpoenas, To Compel Forensic Examination, For Contempt And For Sanctions Against Jason Laye And Incorporated Memorandum Of Law and Compliance with Order (D.E. 15)* filed by Jason Laye. Replies due by 6/21/2022. (Johannes, Vanessa) (Entered: 06/14/2022) |
| 06/14/2022 | 16 | NOTICE by F.C. Bloxom Company re 15 Order,,,,,, Set/Reset Deadlines,,,,, *NOTICE OF OBJECTION TO TRANSFER UNDER RULE 45(f)* (Attachments: # 1 Exhibit A 6/14/22 Docket Illinois Case) (Esquivel, Katy) (Entered: 06/14/2022) |
| 06/10/2022 | 15 | PAPERLESS ORDER. In his Response to Petitioner's Amended Motion to Compel, Respondent requests that this Court defer ruling until at least 8/1/2022. This request is based on the proceedings pending in the case to which this matter relates: *F.C. Bloxom Co. v. Tom Lange Co. Int'l*, No. 20−cv−3147 (C.D. Ill.). Specifically, Respondent contends that the Central District of Illinois is considering motions that would render Petitioner's Amended Motion to Compel moot. Based on Respondent's Response, it appears that transferring this proceeding to the Central District of Illinois would promote judicial economy and lead to the most efficient resolution of this dispute. Under Fed. R. Civ. P. 45(f), this Court may transfer Petitioner's Amended Motion to Compel to the Central District of Illinois if Respondent consents or if this Court finds exceptional circumstances. Therefore, by **6/14/2022**, Respondent shall file a notice indicating whether Respondent consents to the transfer of this matter (i.e., Petitioner's Amended Motion to Compel) to the Central District of Illinois. If Respondent does not consent, the Court will consider whether exceptional circumstances exist. Signed by Magistrate Judge Jared M. Strauss on 6/10/2022. (emd) (Entered: 06/10/2022) |
| 06/09/2022 | 14 | RESPONSE in Opposition re 6 Amended MOTION to Compel *Compliance With Subpoenas, To Compel Forensic Examination, For Contempt And For Sanctions Against Jason Laye And Incorporated Memorandum Of Law* filed by Jason Laye. Replies due by 6/16/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Johannes, Vanessa) (Entered: 06/09/2022) |
| 06/09/2022 | 13 | NOTICE of Attorney Appearance by Vanessa Singh Johannes on behalf of Jason Laye. Attorney Vanessa Singh Johannes added to party Jason Laye(pty:res). (Johannes, Vanessa) (Entered: 06/09/2022) |
| 06/02/2022 | 12 | CASE REFERRED to Magistrate Judge Jared M. Strauss. (emd) (Entered: 06/02/2022) |

| 06/02/2022 | 11 | PAPERLESS ORDER granting 10 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Michael Joseph Connick. Mr. Connick is permitted to appear before this Court on behalf of Plaintiff for all purposes relating to this action. Failure to abide by any Court order may result in immediate revocation of counsel's pro hac vice status. The Clerk is directed to provide Notice of Electronic Filings to Mr. Connick at mconnick@mjconnick.com. Signed by Magistrate Judge Jared M. Strauss on 6/2/2022. (emd) (Entered: 06/02/2022) |
|---|---|---|
| 06/01/2022 | 10 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for MICHAEL J. CONNICK. Filing Fee $ 200.00 Receipt # AFLSDC−15683871 by F.C. Bloxom Company. Responses due by 6/15/2022 (Attachments: # 1 Certification CERTIFICATION OF MICHAEL J. CONNICK, # 2 Text of Proposed Order)(Esquivel, Katy) (Entered: 06/01/2022) |
| 06/01/2022 | 9 | Case Reassignment of Paired Magistrate Judge to Magistrate Judge Jared M. Strauss. Magistrate Judge Lurana S. Snow no longer assigned to case. (jmd) (Entered: 06/01/2022) |
| 05/27/2022 | 8 | ORDER REFERRING CASE TO MAGISTRATE JUDGE, referring case to Magistrate Judge Lurana S. Snow for Report and Recommendation. Signed by Judge William P. Dimitrouleas on 5/26/2022. *See attached document for full details.* (pcs) (Entered: 05/27/2022) |
| 05/27/2022 | 7 | Bar Letter re: Admissions sent to attorney Michael J. Connick, mailing date May 27, 2022, (pt) (Entered: 05/27/2022) |
| 05/26/2022 | 6 | Amended MOTION to Compel *Compliance With Subpoenas, To Compel Forensic Examination, For Contempt And For Sanctions Against Jason Laye And Incorporated Memorandum Of Law* by F.C. Bloxom Company. Responses due by 6/9/2022 (Attachments: # 1 Civil Cover Sheet, # 2 Index of Exhibits, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V)(Esquivel, Katy) (Entered: 05/26/2022) |
| 05/25/2022 | 5 | CORRECTED Clerks Notice of Judge Assignment to Judge William P. Dimitrouleas. Judge K. Michael Moore no longer assigned to case. (pc) Modified text on 5/26/2022 (jc). (Entered: 05/26/2022) |
| 05/25/2022 | 4 | Clerks Notice to Filer re: Electronic Case. Venue on the Civil Cover Sheet does not match the initiating document. The Clerks Office confirmed *Broward (Office − Ft Lauderdale)* as the county with the filer. It is not necessary to re−file this document. (pc) (Entered: 05/26/2022) |
| 05/25/2022 | 3 | Clerks Notice to Filer re: Electronic Case. No Civil Cover Sheet. Filer is instructed to file a Notice (Other) with the Civil Cover Sheet attached within 24 hours of the notice. (pc) (Entered: 05/26/2022) |
| 05/25/2022 | 2 | Clerks Notice of Judge Assignment to Judge K. Michael Moore. (pc) (Entered: 05/26/2022) |
| 05/25/2022 | 1 | Petition/Motion (Complaint) RE: Subpoena to Enforce from Another District . Filing fee $49.00 receipt number AFLSDC−15667714, filed by F.C. Bloxom Company. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V)(Esquivel, Katy) (Entered: 05/25/2022) |

# Exhibit C

## DECLARATION OF WILLIAM F. BLOXOM IN SUPPORT OF APPELLANT'S MOTION TO STAY EXECUTION OF THE AMENDED JUDGMENT AND TO VACATE ORDER RELEASING $165,000 CASH BOND

William F. Bloxom, being duly sworn, declares as follows:

1. Unless otherwise stated, I have personal knowledge of the facts in this Declaration.

2. Appellant F.C. Bloxom Company dba F.C. Bloxom International ("Bloxom") is a buyer and seller of fresh fruits and vegetables ("Produce") based in Seattle, Washington.

3. I hold the titles of Vice President, Secretary and Treasurer. For the past 38 years, I have been active in the company's day-to-day operations, including buying and selling Produce.

4. The Blue Book Services ("Blue Book") is a company that serves as a clearinghouse for obtaining financial, operational and other key information about companies that buy and sell Produce.

5. In my experience, the Blue Book is viewed within the Produce industry as the leading source of business and industry news and information.

6. I have reviewed the Business Reports published by the Blue Book for Bloxom, and for Appellee Tom Lange Company International dba Seven Seas Fruit ("Tom Lange").

7. Both Bloxom and Tom Lange are both members of the Blue Book, and both have been assigned ratings by it. The Blue Book rating and credit score consists of:

a.  A credit worth estimate or financial rating (based on liquidity, asset management, debt management, debt to equity ratio and profitability);

b.  A trade practices rating (reliability, honesty, trustworthiness, competency, efficiency, and resourcefulness) based on confidential assessments of the company by existing Blue Book members; and

c.  Pay descriptions, or the average number of days for payment.

The Blue Book publication titled "Ratings & Blue Book Credit Scores" is attached as Exhibit 1.

8.  Bloxom holds Blue Book Member Number 113369, and the company's current rating is "1500M XXXX B," which is defined as:

a.  "1500M" means that the company has $1,500,000 of estimated credit worth;

b.  "XXXX" indicates an "excellent" trade practices rating; and

c.  "B" means that the company pays suppliers an average of 22-28 days following invoicing.

The "Blue Book Business Report on F.C. Bloxom Co." is attached as Exhibit 2. The Blue Book publication titled "Interpreting Listings" is attached as Exhibit 3.

9.  Tom Lange holds Blue Book member number 102175, and the company's current rating is "15,000M XXXX(30)(40) B," defined as:

a.  "15,000M" means that the company has $15,000,000 of estimated credit worth;

b.  "XXXX" indicates an "excellent" trade practices rating;

c.  "(30)" means that the company has transportation affiliation(s);

d.  "(40)" means that the company is affiliated with one or more firms in the same line of business; and

e.  "B" means that the company pays suppliers an average of 22-28 days following invoicing.

The "Blue Book Business Report on Tom Lange Company, Inc." is attached as Exhibit 4.

10.    Although Tom Lange does business using the trade name "Seven Seas Fruit," that company has a separate Blue Book listing and member number. The "Blue Book Business Report on Seven Seas Fruit" is attached as Exhibit 5.

11.    Seven Seas Fruit holds Blue Book member number 208581, and its Blue Book rating is "(150) XXX(40) B,"  defined as:

    a.    "(150)" means that Seven Seas Fruit did not provide separate financial statements to the Blue Book and relied on the financial statements of its parent company.

    b.    "XXX" indicates a "good" trade practices rating;

    c.    "(40)" means that the company is affiliated with one or more firms in the same line of business; and

    d.    "B" means that the company pays suppliers an average of 22-28 days following invoicing.

12.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 28, 2024.

William F. Bloxom

Page 3 of 3

# Exhibit 1

# RATINGS & BLUE BOOK CREDIT SCORES

*Note: For an in-depth explanation of Blue Book Services Ratings and Credit Scores, view the related New Hire Academy videos found within Blue Book Online Services (www.ProduceBlueBook.com) under the "Education" heading.*



## BLUE BOOK SERVICES RATINGS

A *Blue Book Services* rating consists of three main elements. These three elements, along with specific information related to the function of a company, work together to provide a more complete picture of a company's trading responsibility. Investigations to determine ratings are ongoing. Trade experience surveys are regularly sent to firms within the industry and are a key tool in assigning, monitoring, or changing a rating. Accounts receivable aging information shared by industry contributors is also a data factor.

1) CREDIT WORTH ESTIMATE - financial rating
2) "X" RATING - trade practices rating
3) PAY DESCRIPTION – average number of days for payment rating

### Credit Worth Estimate (Financial Rating)

A company's financial responsibility is reported through its **credit worth estimate**. A credit worth estimate is defined as the accumulation of credit a company can conservatively undertake based upon the financial figures provided. The primary financial information used to determine the credit worth estimate is the balance sheet.

Credit worth estimates are determined by numerous factors. Key factors used when determining the estimate for a company include:

| | |
|---|---|
| Liquidity | (the working capital position – the availability of assets to satisfy obligations) |
| Asset Management | (the turnover related to both fixed assets – the speed of which those assets turn into dollars earned; and inventory – the speed in which inventory is bought and sold) |
| Debt Management | (the ability to handle the amount of debt due within 1 year) |
| Debt-to-Equity | (the amount of debt carried relative to net worth) |
| Return on Equity or Profitability | (the net income earned relative to each dollar of common stockholders' equity) |

*Note: The omission of a credit worth estimate means Blue Book Services has not been provided current financial information from the subject company, or the company is a supply/service business and is therefore not rated.*

*Rating Key Numerals:* These are rating numerals which can be reported in lieu of a credit worth estimate to reflect specific financial circumstances (see *Rating and Update Numerals* key for details).

### "X" Rating (Trade Practices Rating)

The trade practices (reliability, honesty, trustworthiness, competency, efficiency, and resourcefulness) of a business are reported through the **"X" rating**.

The value of an "X" rating ranges from XXXX (4X), the highest rating signifying the highest level in trade practices, to X (1X), signifying a company with poor trade practices based on responses submitted to *Blue Book Services* by the firm's trading partners (or Trade References).

Trade References are those firms the subject company currently (generally within the last six months) transacts business with. Trade References provide *Blue Book Services* with their confidential assessment of the subject firm's trade practices based on their experience with, and level of confidence in, the subject firm.

# RATINGS & BLUE BOOK CREDIT SCORES-continued

## "X" ratings are defined as follows:

| | |
|---|---|
| XXXX | *Excellent* – current responses from trade references indicate excellent trade practices and a high degree of confidence in the subject company's ability. |
| XXX | *Good* – current responses from trade references indicate good trade practices and good confidence in the subject company's ability. |
| XX | *Unsatisfactory* – current responses from trade references indicate unsatisfactory trade practices and/or a lower level of confidence in the subject firm's ability. |
| X | *Poor* – current responses from trade references indicate poor trade practices and/or a lack of confidence in the firm's ability. |

*Note: The absence of an X rating means that either financial considerations or the quantity and/or consistency of the current responses does not permit the reporting of a definite rating of the subject firm. Please note also that Blue Book Services does not rate supply and service businesses (e.g. suppliers of packaging materials, attorneys, consulting firms).*

*Rating Key and Affiliation Numerals:* In certain cases, a numeric rating, or the addition of a numeral to an "X" rating, reflects special circumstances or those in which a degree of qualification is reported. In other cases, numerals are used to indicate subject company has principals in common with other listed businesses (see *Rating and Update Numerals* key for details).

## Pay Descriptions (Average Number of Days for Payment Rating)

Pay Descriptions reflect the pay practices of buyers of product and transportation services as reported by those who have extended credit to these companies. Focusing on the average time a buyer takes to make payments to most vendors, pay descriptions provide an approximation of the number of days between invoice date, (mailing of invoice, if later), and the seller's receipt of payment.

Consideration is given to the following key factors:

- Delay in the arrival of invoices
- Delayed settlement of claims against the product shipped
- The special nature of some transactions in which the amount due is not fixed by arrival time at destination (consignment or price-after-sale)

Current industry pay practice is reflected in the pay description definitions. Pay descriptions are defined as follows:

| PAY DESCRIPTION TIMELINE<br>Measure time between invoice date (or mailing of invoice, if later) and receipt of check. | | | | | | |
|---|---|---|---|---|---|---|
| PAYS WITHIN 14 DAYS | 21 DAYS | 28 DAYS | 35 DAYS | 45 DAYS | 60 DAYS | OVER 60 DAYS |
| AA (0 - 14 days) | | | | | | |
| A | (15-21 days) | | | | | |
| B | | (22-28 days) | | | | |
| C | | | (29-35 days) | | | |
| D | | | | (36-45 days) | | |
| E | | | | | (46-60 days) | |
| F | | | | | | (Uncertain after 60 days) |

*Note: Pay descriptions are not reported on brokers, the major portion of whose volume is handled exclusively on a brokerage/agency basis.*

*Note: The credit terms of those involved in selling supplies and services to companies in the industry make pay description definitions noted above largely inapplicable, except that reports of "slow" pay on purchases of this nature command consideration in the overall credit worth estimate of companies which purchase from the supply and service sector.*

## HOW BLUE BOOK SERVICES RATINGS ARE DETERMINED AND ESTABLISHED

### Determining Blue Book Services Ratings

*Blue Book Services* ratings reflect the information submitted on the subject company, via recently submitted trade experience surveys, financial statements, and accounts receivable aging reports.

Reports from trading partners are obtained ensuring ratings are a fair and true summary of the subject

# RATINGS & BLUE BOOK CREDIT SCORES-continued

company's current performance level. Accordingly, it is to every produce company's advantage to regularly provide *Blue Book Services*, in confidence, with the following:

> **1)** a complete list of references with whom you regularly do business,
> **2)** accounts receivable aging reports,
> **3)** responses to trade experience surveys, and
> **4)** financial information.

> *"X" Ratings reflect the trade's experiences*

State-of-the-art technology is used to help compile and average the volume of trade information used in establishing Blue Book "X" ratings and pay descriptions. Ratings are not reported or changed without having first been reviewed and evaluated by our team of experienced rating and financial analysts. *Blue Book Services* makes every attempt to contact you prior to reporting a rating change on your company.

**Credit Worth Estimate:**
Credit worth estimates are based upon the subject company's current financial statements following completion of the annual business "closing" (calendar or fiscal year-end) or other occasions upon request.

**"X" Rating:**
The "X" rating of a company is determined by the various degrees of confidence expressed by their trading partners.

A key tool used in gathering data to assign an "X" rating is what is referred to as the subject company's "reference list." This list contains those companies the subject transacts business with on a regular basis. These can include those who sell to, buy from, transport to and/or from, and suppliers of nonindustry products (e.g., boxes).

Facilitated by trade experience surveys sent via the subject company's reference list, the "X" rating is assigned using the "average" of the responses received. This "rating average" process has proven itself as a valid method on which to base "X" ratings.

Pay descriptions and "X" ratings are reported separately, but pay practice continues to be a part of and directly affects a company's "X" rating (i.e., the willingness, desire, ability, and determination to pay according to recognized trade standards).

Trade experience surveys citing disputes, misunderstandings, or other difficulties are considered in relationship to the expressed averages of all other survey reports. This helps to remove the possibility of prejudicial reports or personal feelings unduly influencing any "X" rating.

**Pay Description:**
The average pay experience provided by trade experience surveys and accounts receivable aging reports is the proven method on which to report pay descriptions when applicable. The averages of current reports and previous investigations are given careful analysis. Pay Descriptions consider the amount of days between the invoice date/mailing of invoices and receipt of checks.

Trade experience surveys citing disputes, misunderstandings, or other difficulties are considered in relationship to the expressed averages of all other reports. This helps to remove the possibility of prejudicial reports or personal feelings unduly influencing any pay description.

**Establishing Your Blue Book Services Rating**
Since *Blue Book Services* ratings indicate the best resources in the industry, it is to your advantage to establish a credit worth estimate, an "X" rating, and pay description. To establish your rating:

> **1)** furnish *Blue Book Services* in confidence, with a complete list of your trading partners — your reference list
> **2)** at minimum, in confidence, annually submit complete financial statements for your business
> **3)** be conscientious in your payment practices

# RATINGS & BLUE BOOK CREDIT SCORES-continued

A credit worth estimate can be established by submitting your financial statement at any time. Statements are best provided via a complete Balance Sheet (and preferably, operating profit and loss statement). An accountant-prepared financial statement for the most recent business year-end is preferred; however, if this is unavailable, a copy of the balance sheet portion of your latest federal income tax return is an alternative (for proprietors, a financial statement form for completion and signature is available upon request).

The process of earning an "X" rating is begun by providing a list of references for your company, which can be submitted via a specific form available by request, or by providing a list of the companies with which you do business, including names and locations, or by adding your references via Blue Book Online Services (BBOS).

Pay is centrally important when it comes to a company establishing its industry standing. To take advantage of an opportunity to become one of the industry's preferred companies, submit your reference list.

By submitting a financial statement and list of your references to *Blue Book Services*, the process of assigning your firm's rating can be completed. Once a *Blue Book Services* rating is assigned, your company is more likely to be considered as a viable trading partner within the industry.

## INTERPRETING BLUE BOOK SERVICES RATINGS

The rating system reflects the performance of a company, dictated directly by the industry via trade, experience surveys and/or accounts receivable aging data, and the subject company's financial information, submitted in confidence to *Blue Book Services*. Each element of the rating is an important factor when considering trading with a company. The credit worth estimate, the "X" rating, and the pay description must be considered in relation to the other key listing information of classification, volume, and commodities.

In the credit worth estimate element of the rating, the "M" designates $1,000; thus a 50M credit worth estimate is a designation for $50,000. Credit worth estimates are assigned in the following increments:

A greater confidence in dealing with a company can be derived by the level of "X" rating assigned.

| **1** | CREDIT WORTH | |
|---|---|---|
| | -M | Less than 1M |
| | 1M | $1,000 |
| | 10M | $10,000 |
| | 100M | $100,000 |
| | 1000M | $1,000,000 |
| | 10,000M | $10,000,000 |
| | 100,000M | $100,000,000 |

When applicable, a XXXX company:

- exceeds the XXX company profile requirements
- requires evidence of stability through regularly submitted balance sheets reflecting a healthy financial position
- when buying, meets the standard pay practice of "B" or better to sustain the 4 "X" rating.

When applicable, a XXX company:

- is generally knowledgeable and ethical, providing timely payment regardless of ability to collect
- describes merchandise truthfully
- uses care in grading, packing, processing, shipping, and/or loading merchandise
- exercises efficiency in meeting shipping dates
- completes shipment according to contract terms, regardless of market conditions
- promptly communicates in the event of problems

- promptly seeks to fairly settle/resolve valid claims
- accepts merchandise of contract grade, regardless of market conditions
- is not a "technical" trader or chronic "kicker"
- demonstrates a willingness to aid in reducing losses when unavoidable trouble arises
- provides true and complete accounting of sale
- is well versed on market conditions and trade practices

# RATINGS & BLUE BOOK CREDIT SCORES-continued

⊃ in consignment situations, does not push their own merchandise on a slow market to the detriment of shippers for whom product is being handled

⊃ if a broker: faithfully represents principal's rights; does not encourage sales to doubtful accounts; issues confirmation of sale and promptly collects/remits if responsible.

The pay description of a company will indicate a level of understanding that payments made in a timely manner are critically important to the closing of each transaction and the company's general pay practices.

*Rating & Blue Book Scores: Case Studies*

While many creditors consider payments made within 30 days to be acceptable, a preferred approach is to expect and demand the very best pay of which each buyer is capable. Payments which extend beyond 30 days kindle doubts and criticism as delayed payment time becomes increasingly extended.

However, contracts or agreements are only as good as the companies involved. Companies with honest and fair intentions confine their trading and financial obligations within the limits of their ability to perform and to pay. *Blue Book Services'* rating system works to provide a complete picture to help guide your business to companies that are the best resources to enable your business to succeed.

## TRADING AND TRANSPORTATION MEMBERS

Trading Membership (including "Transportation Membership") is a prestigious, honorary designation awarded by *Blue Book Services*, recognizing the member company is financially sound and has established an exceptional reputation for honest, fair trading policies and payment practices.

### Eligibility Requirements

⊃ The rating average of all submitted trade experience surveys must be at least an average 3.35 "X" each year for a minimum of 5-7 consecutive years and continue each subsequent year.

⊃ A high standard of pay practice for a minimum of 5-7 consecutive years (i.e., "B" Pay Description or better).

⊃ Submission of current, updated trade partners (reference lists).

⊃ Submission of timely financial statements and an assigned credit worth rating showing financial strength for the past 5-7 years; continued submission of financial figures each subsequent year.

⊃ Participation in rating processes (providing trade feedback about the company's accounts via trade experience surveys) or accounts receivable aging information.

⊃ Participation in binding arbitration before Blue Book Services when a qualified dispute* arises with another Trading Member.

⊃ Maintained requirements on a day-forward basis, once indicated as a Trading Member or Transportation Member.

 

A Trading/Transportation Member *Blue Book Services'* listing is printed in the Blue Book in heavy bold-faced type. The date the designation was first earned appears within the listing in both print and on Blue Book Online (BBOS). Trading/Transportation Members are also granted the use of the Trading/Transportation Members seal on company literature and advertisements. This emblem is evidence to the industry that *Blue Book Services* recognizes the excellent trade standards of this company. A plaque is provided to display this certification by *Blue Book Services, Inc.*

*Note: A "qualified dispute" is a dispute between Trading/Transportation Members arising from a produce transaction or transactions, including the transportation thereof, in which one of the parties wishes the dispute to be submitted to binding arbitration before Blue Book Services, and which is not eligible to be litigated before the U.S. Department of Agriculture's Perishable Agricultural Commodities Act (PACA) Branch for any reason including the running of the Act's statute of limitations; and which is not expressly subject to another arbitration agreement or choice of forum provision.*

# RATINGS & BLUE BOOK CREDIT SCORES-continued

*In the event a qualified dispute arises and a Trading/Transportation Member declines to participate in binding arbitration before Blue Book Services, Blue Book Services may, at its sole discretion, withdraw its Trading/Transportation Membership and/or publish notice that the company declined to arbitrate a pending dispute. The foregoing notwithstanding, this Trading/Transportation Member Agreement is not intended to expressly or impliedly create a court enforceable duty or otherwise require a Trading/Transportation Member to submit to binding arbitration before Blue Book Services; however, any arbitration submitted to Blue Book Services shall be conducted according to the Blue Book Services Arbitration Agreement in effect at the time the arbitration is initiated and shall be binding and enforceable in any court of competent jurisdiction under the Federal Arbitration Act. Additionally, Blue Book Services may, at its sole discretion, withdraw the Trading/Transportation Membership of any such Member that fails to voluntarily comply with an Arbitration decision or award issued pursuant to the BBSI Arbitration Agreement.*

## BLUE BOOK CREDIT SCORES

*Note: For an in-depth explanation of Blue Book Services Ratings and Credit Scores, view the related New Hire Academy videos found within Blue Book Online Services (www.ProduceBlueBook.com) under the "Education" heading.*



A useful tool in evaluating credit risk is credit scores. Blue Book Credit Scores are a powerful credit tool for sellers and are designed to predict the likelihood a negative credit event will occur within a period of time (normally one year).

Scores are best used as a supplement and in conjunction with ratings. Blue Book Credit Scores are not based on subjective information and are derived primarily from pay information. While credit scores and ratings each have their own unique characteristics, using both to evaluate the credit risk of a current or potential account is a good business practice.

### Defining Blue Book Credit Scores
A Blue Book Credit Score is a number between 500 and 999, with 999 being the highest favorable score, assigned to companies buying produce. Higher scores designate a less likely negative credit event, such as delinquency or default. The lower the score, the greater the likelihood of delinquency or default.

## BLUE BOOK CREDIT SCORES ACCESS

Blue Book Credit Scores and Blue Book Credit Score reports are available via Blue Book Online Services (BBOS) to members with premium membership packages. Scores are shown when viewing a company "Listing Summary."

## HOW BLUE BOOK CREDIT SCORES ARE DETERMINED AND ESTABLISHED

### Determining a Blue Book Credit Score
Computed by a proprietary statistical credit scoring model, Blue Book Credit Scores are evaluated and the scoring model is enhanced by adding new data or by combining different data sets to ensure the statistical model is providing the best predictions.

A majority of companies that buy produce will be scored, provided the necessary type of information is available, such as pay reports. Although the appropriate information might be available to establish a *Blue Book Services'* rating, including a credit worth estimate and trade practices assignment, a company might not have a Blue Book Credit Score if certain required information is unavailable.

Blue Book Credit Scores are based on data and statistics related to credit worthiness, with the primary attribute being pay information received on the particular company.

Additional attributes are also calculated in the model to determine a Blue Book Credit Score, such as:
- number of prompt pay responses
- the change in the number of those responses over time, and
- the consistency of the pay information.

# RATINGS & BLUE BOOK CREDIT SCORES-continued

For example, if 25 pay reports received on a company within the past 30 days—when considered relative to historical information—indicate a higher amount of slower pay reports, the Blue Book Credit Score will reflect this trend and the overall score will likely be lowered.

**Establishing your Blue Book Credit Score**
A Blue Book Credit Score is governed by your payment of accounts and your submission of financial statements reflecting financial ratios.

To establish your Blue Book Credit Score:
- furnish *Blue Book Services*, in confidence, a complete list of the companies with whom you regularly do business – your reference list

## INTERPRETING BLUE BOOK CREDIT SCORES

Blue Book Credit Scores can aid your business by–
- quickly identifying companies at risk
- helping you make credit decisions
- determining your overall credit portfolio risk
- identifying trends
- helping rank accounts
- helping create new credit guidelines
- saving you time
- saving you money

| SCORE | POSSIBLE ACTION AND / OR INTERPRETATION |
|---|---|
| 900 - 1000 | Continue to do business with normal credit extensions (provided adherence to established terms continues.) |
| 800 - 900 | Monitor the account for trade survey changes via Business Reports. |
| 700 - 800 | Watch closely—if there are adverse changes in the score, consider holding the credit line until payment in full is received. |
| <700 | Access a *Blue Book Services* Business Report and examine in detail, scrutinizing trade feedback received on the subject company. Companies with scores below 700 generally receive slower pay reports. If the score is extremely low, credit holds should be considered. |

## HOW RATINGS AND CREDIT SCORES WORK TOGETHER

While ratings reflect a company's historical and current average performance, Blue Book Credit Scores are predictive in nature and are based on promptness of payment.

"X" ratings and pay descriptions are assigned based on reports received from trading partners, evaluating the overall business practices of a company including pay patterns.

Though elements of similar data are used in "X" ratings and pay descriptions such as pay reports, Blue Book Credit Scores are based on objective data elements including pay and financial information, are determined by a statistical credit scoring model, and endeavor to predict the statistical likelihood of a future credit event.

While two companies may carry the same rating, one might have the lower Blue Book Credit Score and be the riskier account due to fewer prompt pay reports than received in the past, and/or variability in reports. In combination with *Blue Book Services'* ratings, Blue Book Credit Scores will assist you in making faster, more qualified credit decisions.

r11/23/21

# Exhibit 2

BLUE BOOK SERVICES
845 E. GENEVA ROAD
CAROL STREAM, IL 60188
Phone 630 668-3500
FAX 630 668-0303
info@bluebookservices.com
www.bluebookservices.com

# BLUE BOOK SERVICES
## Business Report on
## F. C. Bloxom Co.
Information available through 02/28/2024



© 2024 Blue Book Services

This COMPLETE BUSINESS REPORT is provided to the subscriber under the terms of the Membership Agreement and is IN CONFIDENCE, for the subscriber's exclusive use, without recourse and without guarantee of correctness. Trade experience information may include disputed items, skipped invoices or other extenuating circumstances.

**BB # 113369**
**F. C. Bloxom Co.**
PO Box 3737
Seattle, Washington 98124-3737
USA
Phone: 206 624-1000
Potatoes & Onions FAX: 206 382-1315
www.fcbloxom.com

### Alternate Trade Names / Banners:

F. C. Bloxom Co.

### Credit Snapshot:

| | |
|---|---|
| Current HQ Rating: | 1500M XXXX B |
| Current Blue Book Score: | 870 (Industry Avg: 807) |
| Last Financial Statement Date: | 12/31/2022 |
| Net Worth: | Submitted Confidentially |
| Avg Trade Practices ('X') Reports: (past 6 months) | 3.58 (Industry Avg: 3.42) (scale: 1=poor, 4=excellent) |

### Business Snapshot:

| | |
|---|---|
| Business Start Date: | 1941 |
| Incorporation Date: | January 5, 1965 |
| Incorporated In: | Washington |
| PACA License Number: | 19207275 |
| DRC License: | DRC Member |

### Business Ownership:

Undisclosed, 100.00%

*Business Report on F. C. Bloxom Co.   BB #: 113369*

## RATING HISTORY

**Current HQ Rating:**

1500M XXXX B
(unchanged since 06/01/2021)
**Trading Member since 1972**

**HQ Rating Trend:**

| Reported Date: | New Rating: |
|---|---|
| 06/01/2021 | 1500M XXXX B (current) |
| 09/30/1999 | 750M XXXX B |

**Rating Analysis:**

This business report includes trade experience information collected through Blue Book's proprietary trade survey methodology.  While this business report does not list details about how this company's pay practices are reported by industry creditors who submit their accounts receivable (A/R) data to Blue Book, all reported A/R information has been analyzed and supports this company's assigned rating.

For information about accessing A/R aging data as an A/R file contributor, contact a Blue Book Services Rating Analyst at 630.668.3500 or email ratings@bluebookservices.com.

**Current Rating Definitions:**

| 1500M = | $1,500,000 est'd credit worth |
|---|---|
| XXXX = | Excellent |
| B = | 22 - 28 days on average |

For help understanding the Rating Definitions, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

# BLUE BOOK SCORE HISTORY

For more information about Blue Book Scores, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

**BBScore: 870**





| Industry Percentile | Subject Company  Score | Industry Average |
|---|---|---|
| 72 | 870 | 807 |
| Subject company falls in the Low Risk Category | | |

*Note: Percentile is the value at or below which a percentage of data falls.*

Business Report on F. C. Bloxom Co.   BB #: 113369

# CLAIM ACTIVITY

| CLAIMS FILED WITH BLUE BOOK SERVICES | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed | File ID | Open/Closed | Claim Amount | Issue | Status | Note |
| Last Activity | Claimant Type | | Meritorious | Description | | |

| PACA REPARATION CASES | | | | |
|---|---|---|---|---|
| Informal Complaints | | | Formal Complaints | |
| No. of Informal Reparation Complaints | 0 | | No. of Formal Reparation Complaints | 1 |
| No. of Disputed Informal Reparation Complaints | 0 | | No. of Disputed Formal Reparation Complaints | 1 |
| | | | Total Claim Amount | $66,581.01 |

| LAWSUITS | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed | Case # | Court | Suit Type | Claim Amount | Case Status | Note |

# FINANCIAL INFORMATION

Please review the following for a complete list of Financial Statement Ratio definitions:   Ratio Definitions

Financial statements are submitted in confidence to be used for rating purposes only.  Specific figures are not quoted. The most recent financial statement provided by the company is a Year-End statement dated 12/31/2022.  How prepared: Internally Prepared.

## TRADE REPORT SUMMARY





## TRADE REPORT DETAILS

Trade practices ratings and pay descriptions (where appropriate) reflect the experience of those who have reported dealings with the subject company. Blue Book ratings are not based solely on trading experience report averages; rather, experienced rating and financial analysts also take into consideration other important factors such as the trend of trading experiences reported over time. If you have any questions about the Trade Report Summary or Trade Report Details in this Business Report, please contact the Blue Book Information & Service Center.  For definitions of symbols and terminology, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

Business Report on F. C. Bloxom Co.    BB #: 113369

| Reports From Produce References | | | | | |
|---|---|---|---|---|---|
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |
| 01/09/2024 | | XXX | | | |
| 12/05/2023 | 1-6 Months | XXXX | 22-28 (B) | 10-50M | |
| 11/09/2023 | | XXX | 22-28 (B) | | |
| 11/08/2023 | 1-6 Months | XXXX | 1-14 (AA) | | 10 Days |
| 10/19/2023 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 10/09/2023 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 10/09/2023 | 1-6 Months | XXXX | 15-21 (A) | 250-500M | |
| 10/09/2023 | 1-6 Months | XXX | 29-35 (C) | 75-100M | |
| 10/04/2023 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 10/04/2023 | 1-6 Months | XXXX | 22-28 (B) | | |
| 10/04/2023 | 1-6 Months | XXXX | 15-21 (A) | Over 1 million | |
| 10/04/2023 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 06/14/2023 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 06/09/2023 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 05/30/2023 | 1-6 Months | XXXX | 29-35 (C) | 75-100M | |
| 05/24/2023 | 1-6 Months | XXXX | 15-21 (A) | 75-100M | |
| 05/24/2023 | 1-6 Months | XXXX | 22-28 (B) | | |
| 05/15/2023 | 1-6 Months | XXXX | | | |
| 01/26/2023 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 01/25/2023 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 01/25/2023 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 01/25/2023 | 1-6 Months | XXXX | 22-28 (B) | 50-75M | |
| 01/25/2023 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 11/23/2022 | | XXX | | | |
| 11/07/2022 | 7-12 Months | XXX | 29-35 (C) | 5-10M | |
| 10/12/2022 | 1-6 Months | XXXX | | | |
| 10/10/2022 | 1-6 Months | XXXX | 29-35 (C) | 100-250M | |
| 10/07/2022 | 1-6 Months | XXX | 22-28 (B) | 5-10M | |
| 10/07/2022 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 10/07/2022 | 1-6 Months | XXXX | 15-21 (A) | 50-75M | |
| 10/07/2022 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 10/07/2022 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 10/07/2022 | 1-6 Months | XXX | | 50-75M | |
| 10/07/2022 | 1-6 Months | XXXX | 22-28 (B) | 50-75M | |
| 10/07/2022 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 09/21/2022 | | XXXX | | | |
| Reports From Transportation References | | | | | |
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |
| 05/25/2023 | 1-6 Months | XXXX | 1-14 (AA) | 5-10M | |
| 10/17/2022 | 1-6 Months | XXXX | 1-14 (AA) | 5-10M | |
| Reports From Supply Firms | | | | | |
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |

# BUSINESS BACKGROUND

## Business Events

**January 5, 1965**   Subject company converted to a Corporation under Washington law.

**1941**   Subject company was established as a Partnership .

# PEOPLE BACKGROUND

## Jeffrey (Jeff) P. Hawes, President

| Date | Company | Title |
|---|---|---|
| 1985 - Current | F. C. Bloxom Co., Seattle, WA | President |

## Robert (Bob) B. Bloxom, Vice President

| Date | Company | Title |
|---|---|---|
| 1985 - Current | F. C. Bloxom Co., Seattle, WA | Vice President |
| 1985 - 2014 | F. C. Bloxom Co., Seattle, WA | Secretary/Treasurer |

## William (Bill) F. Bloxom, Secretary/Treasurer

| Date | Company | Title |
|---|---|---|
| Not Avail. | F. C. Bloxom Co., Seattle, WA | Secretary/Treasurer |
| Not Avail. | F. C. Bloxom Co., Seattle, WA | Vice President |

# BUSINESS PROFILE

## Method(s) of Operations:

Importer

Exporter

Receiver

Distributor

Repacker

## Business Size:

Annual truckloads: 2500

## Certifications:

Certified Organic

Food Safety Certified

All certification information is self-reported.

## Commodities:

Fruit, Citrus, Apple, Grape, Vegetable, Onion, Potato, Asparagus, Tomato, Sweet Onion

## Growing Characteristics:

Organic

## Bank:

U.S. Bank

## Licenses:

DRC Member

PACA License: 19207275

# BRANCHES

**BB # 285739**
**F. C. Bloxom Co.**
Walla Walla, WA
Produce Broker, Produce Buyer, Produce Seller

# Exhibit 3

# INTERPRETING LISTINGS

## THE IMPORTANCE OF BLUE BOOK SERVICES LISTINGS

*Blue Book Services* listings are organized into three main categories: produce, transportation, and supply/ service. Produce listings include businesses throughout the supply chain that deal in fresh fruit and vegetables. Transportation listings include companies that handle the transportation of commodities in a variety of ways. Supply and service listings include companies that sell products and services required by those within the produce industry (including boxes, cartons, or labels, as well as legal information, trade media, etc.).

Listings include basic information about a company such as address, phone number, web site, e-mail, function (classification), commodities handled, and *Blue Book Services* rating. Companies can also opt to further describe business offerings, capabilities, or personnel using "Descriptive Listing Content." Descriptive Listing Content, including all certification information, are self-reported. These lines are billable annually and include publication in print as well as online. Additional information about a company is available through Blue Book Online Services (BBOS) at www.ProduceBlueBook.com.

The following graphics will help you understand how *Blue Book Services* listings are organized and published. If you have questions about a listing or rating, please be sure to contact us.

## HOW TO INTERPRET LISTINGS





**PRODUCE SAMPLE LISTING**

A XYZ Wholesale Produce. (A corporation.)
B PO Box 1234. (32614-1234) Terminal Mkt Units 6-10.
C Phone 812 946-8329 FAX 812 946-8463 E-Mail: xyz@xyzwholesale.com Web Site: www.xyzwholesale.com
D Keith Nelson, Sales Nelson cell 812 946-0000 Nelson E-Mail: knelson@xyzpro.com Specialize in Citrus Handle complete line of Fruits & Vegetables USDA NOP certified organic grower & packer GLOBALGAP certified Brands: XYZ & ABC Unload 5 A.M. to noon Bank: Crown National Bank PACA License #12345678 GPkrProcRJ 500 CitOrFV
Rating.................250M XXX B
E    F G    1 2 3

**TRANSPORTATION SAMPLE LISTING**

A XYZ Transportation, Inc. PO Box 1234. (32614-1234)
B Phone 812 946-8329 FAX 812 946-8330
C E-Mail: xyz@xyztransportation.com Web Site: www.xyztransportation.com Bill Jones, Transportation Manager Jones cell 812 946-3269
D Jones res. 812 946-8440 Keith Nelson & Bob Smith, Dispatch Nelson after hours 812 946-8441 Handle exempt & regulated freight Operate 90 company owned refrigerated units Cover 48 states & Canada Bank: Crown National Bank MC #123456 TruckertransBkr 5000
Rating.........250M XXX B
E    F    1 2 3

**SUPPLY SAMPLE LISTING**

A XYZ County Packaging, Inc.
B PO Box 4567. (45674-1234) 123 S Union Ave.
C Phone 834 567-0909 FAX 834 587-3833 E-Mail: xyz@packaging.com Web Site: www.xyzpackaging.com
D Call Bill Smith Manufacturers of corrugated shipping containers Custom formulation of chemicals available Serve Midwest
G Products & Services: Chemicals, Boxes & Cartons, Packaging Supplies

## DEFINITIONS

A — Business name & ownership
B — Addresses
C — Phone/Fax numbers, E-Mail Addresses, & Web Site
D — Descriptive Listing Content
E — Classifications
F — Volume
G — Commodities/Products/Services
1 — Credit Worth Estimate
2 — X-Rating
3 — Pay Description

# INTERPRETING LISTINGS-continued

## UNDERSTANDING BASIC ELEMENTS OF PRODUCE, TRANSPORTATION & SUPPLY LISTINGS

**A. BUSINESS NAME AND CORPORATE STRUCTURE:** Oftentimes, a business' trade name conveys the corporate structure; but, when it doesn't, a parenthetical reference will immediately follow. Subsidiary and "d/b/a" relationships, if any, will be shown here.

**B. ADDRESSES:** Normally, a listing will contain at least one address — typically the mailing address. When a second address applies, perhaps a street or "physical" address, it will be referenced immediately afterward. Additional addresses may be placed in the "descriptive listing content" section of the listing.

**C. PHONE/FAX NUMBERS, E-MAIL ADDRESSES, AND WEB SITE:** Generic phone, fax, e-mail, and web site references are grouped together, directly after addresses. When associated with a particular person or place, such references will appear in the "descriptive listing content" section of the listing.

**D. DESCRIPTIVE LISTING CONTENT:** A basic *Blue Book Services* listing generally includes elements A, B, and C plus the "Three-Point Rating System" for produce and transportation companies. Such listings are published without charge. Other elements not specifically illustrated here may also be listed for free.

> **IS YOUR LISTING COMPLETE?**
>
> *Do you:*
>
> • Have personal contact information?
> • Operate in a specific region?
> • Handle specialized commodities?
> • Handle exempt or regulated freight?
> • Specialize in LTL consolidation?
> • Offer specific products/services?
>
> Members value information. Consider adding Descriptive Listing Content for a nominal charge.
>
> Contact a Listing Specialist for more ideas on how to enhance your *Blue Book Services* listing.

Usually, businesses choose to more completely describe their offerings, capabilities, or their personnel using "descriptive listing content" as suggested in the example. These lines are billable annually and include publication in print as well as online. Claims such as "We sell the finest produce" or "We are the best transporters" are not allowed. Descriptive Listing Content, including all certification information, are self-reported. To customize or update your company listing, contact a Listing Specialist at listing@bluebookservices.com.

**E. CLASSIFICATIONS:** How a company transacts business, is shown by designating a "classification." Specific classification definitions are shown in the table following this section. Classifications are generally listed in the order of main business function. Classifications are not applicable to supply/service listings.

**F. VOLUME:** Indicated in truckloads of approximately 44,000-45,000 lbs each.

**G. COMMODITIES/PRODUCTS/SERVICES:** Produce companies will include in their listing, the commodities that they buy/sell in order of relative importance. Commodities are abbreviated and complete definitions can be found on the back cover of the Blue Book. For supply/service companies, this portion of the listing is comprised of the products and/or services offered by the company. The firm name and location will also be shown within the "Supplies and Services Product Index" under each of these product and/or service categories found in the listing. Product Categories are general in nature to encompass the many services and products offered throughout the industry.

**1, 2, AND 3—THE RATING SYSTEM:** A company's rating includes indicators for safe credit extensions (Credit Worth Estimate), trade practices (X-Rating), and pay practices (Pay Descriptions). A full explanation of Blue Book ratings can be found in the "Ratings & Blue Book Credit Scores" section.

**1 CREDIT WORTH**

| | |
|---|---|
| -M | Less than 1M |
| 1M | $1,000 |
| 10M | $10,000 |
| 100M | $100,000 |
| 1000M | $1,000,000 |
| 10,000M | $10,000,000 |
| 100,000M | $100,000,000 |

**2 "X" RATING**

| | |
|---|---|
| XXXX | Excellent |
| XXX | Good |
| XX | Unsatisfactory |
| X | Poor |

**3 PAY DESCRIPTIONS**

| | |
|---|---|
| AA | within 14 days |
| A | 15 - 21 days |
| B | 22 - 28 days |
| C | 29 - 35 days |
| D | 36 - 45 days |
| E | 46 - 60 days |
| F | 60+ days |

# INTERPRETING LISTINGS-continued

## PRODUCE CLASSIFICATIONS DEFINED

In order to fully understand a *Blue Book Services* listing, you will need to know how businesses are classified and what the classifications mean. Classifications describe how a business operates and are shown within a listing in order of importance.

| PRODUCE CLASSIFICATION | ABBREVIATION | CLASSIFICATION DEFINITION |
|---|---|---|
| Buying Broker | BuyB | Acts as a purchasing agent, usually for a distant buyer (does not take title to product). |
| Buying Office | BuyingOffice | Location focused on buying product. Purchases are generally delivered to points other than Buying Office. |
| Canner | Canner | Produces canned product. |
| Chipper | Chipper | Produces potato chips. |
| Cold Storage | ColdStorage | Temperature controlled storage facility. |
| Commission Merchant | C | Acts as agent for the sale of merchandise on consignment. |
| Dehydrator | Dehydrator | Produces dehydrated product. |
| Distributor | Dstr | Purchases product in own name usually from shippers or other distributors, and generally sells outside their local area; however, in most cases does not take physical possession of merchandise. |
| Exporter | Exp | Sells product to buyers located in another country. |
| Food Hub | FdHub | Consolidate, distribute or market local and/or regional produce for sale to wholesale, retail & institutional accounts. |
| Foodservice | Fdsv | Buys and receives product for distribution to institutional accounts such as schools and restaurants. |
| Freezer | Freezer | Location has equipment and expertise for freezing fresh fruits and/or vegetables. |
| Fresh Cut Processor | FrCutProc | Physically alters the form (i.e. slice, dice, shred, core, blend, etc.) of product, without compromising its fresh state. |
| Grower | G | Grows product. |
| Importer | Imp | Buys product from suppliers located in another country. |
| Jobber | J | Sells locally in small lots and purchases from receivers on their local market. |
| Juicer | Juicer | Produces juice. |
| Load Consolidator | LoadCon | Assimilates one or more LTL lots into one unit for shipment. |
| Loading Point | LP | Shipping point facility for loading product onto trucks. |
| Packer | Pkr | Takes bulk or unprocessed product and prepares for storage, shipment, and sale. |
| Peeler | Peeler | Peels product. |
| Pickler | Pickler | Produces pickles. |
| Precooler | Precooler | Cools product prior to loading. |
| Preserver | Preserver | Produces preserves. |
| Processor | Proc | Physically alters the form of product and either blends it as an ingredient with other non-produce items (i.e. potato salad) and/or prepares it by cooking, freezing or drying. |
| Produce Auction | ProduceAuction | Buys or sells produce at auction. |
| Produce Warehouse | ProdWhse | Provides facilities for storage of product. |
| Receiver | R | Purchases and takes physical possession of trucklots or carlots and locally resells same intact or in jobbing lots. |
| Repacker | Repkr | Takes bulk or distressed product and repackages it into consumer-size packaging. |
| Restaurant | Restaurant | Restaurant. |
| Retail | Ret | Sells produce to consumer. |
| Ripening Room Services | RipeningRoomServices | Facility to assist in ripening product. |
| Sales Office | SalesOffice | Location focused on selling product that typically is shipped from another facility. May handle sales for numerous shipping sites. |

—continued—

# INTERPRETING LISTINGS-continued

| PRODUCE CLASSIFICATION | ABBREVIATION | CLASSIFICATION DEFINITION |
|---|---|---|
| Seller Broker | B | Generally represents the shipper (does not take title to product). |
| Shipper | S | Has for sale in their own name merchandise which they have grown and/or packed, or may sell for the account of growers or other shippers. |
| Storage | Stor | Facility for storing product. |
| Truck Loading and Unloading Service | TruckServices | Truck loading and unloading service. |
| Wholesale Grocer | Wg | Buys and receives product for distribution to retail accounts. |

## TRANSPORTATION CLASSIFICATIONS DEFINED

| TRANSPORTATION CLASSIFICATION | ABBREVIATION | CLASSIFICATION DEFINITION |
|---|---|---|
| Air Carrier | ACar | The principal that agrees to transport a commodity at an agreed freight rate and is responsible for loss directly relating to providing unsatisfactory transportation service. |
| Freight Forwarder | FgtF | An intermediary that arranges for transportation and coordination of documentation; generally functions as a part of international freight movements. |
| Intermodal | Inmod | Containerized freight utilizing various modes of transportation. |
| Ocean Carrier | OceanCarrier | The principal that agrees to transport a commodity at an agreed freight rate and is responsible for loss directly relating to providing unsatisfactory transportation service. |
| Other Transportation/Logistics Services | TransLog | Assumes responsibility for "door to door" movement of goods. May utilize multiple modes and types of transportation. |
| Rail Carrier | RailCarrier | The principal that agrees to transport a commodity at an agreed freight rate and is responsible for loss directly relating to providing unsatisfactory transportation service. |
| Trailer Rail (Piggyback) | TrlRl | Transportation of commodity loaded in van via railroad flat cars (Piggyback). |
| Truck/Transportation Broker | TrucktransBkr | Individual or entity that arranges and/or contracts for transportation of goods as a service to its customers. |
| Trucker | Trucker | The principal that agrees to transport a commodity at an agreed freight rate and is responsible for loss directly relating to providing unsatisfactory transportation service. |

# Exhibit 4

BLUE BOOK SERVICES
845 E. GENEVA ROAD
CAROL STREAM, IL  60188
Phone 630 668-3500
FAX 630 668-0303
info@bluebookservices.com
www.bluebookservices.com

# BLUE BOOK SERVICES
## Business Report on
## Tom Lange Company, Inc.
Information available through 02/28/2024



© 2024 Blue Book Services

This COMPLETE BUSINESS REPORT is provided to the subscriber under the terms of the Membership Agreement and is IN CONFIDENCE, for the subscriber's exclusive use, without recourse and without guarantee of correctness. Trade experience information may include disputed items, skipped invoices or other extenuating circumstances.

## BB # 102175
## Tom Lange Company, Inc.
500 N Broadway Ste 1360
Saint Louis, Missouri 63102-2110
USA
Phone: 314 934-2800
info@tomlange.com
www.tomlange.com



### Alternate Trade Names / Banners:

Tom Lange Company, Inc.

### Credit Snapshot:

| | |
|---|---|
| Current HQ Rating: | 15,000M XXXX(30)(40) B |
| Current Blue Book Score: | 871 (Industry Avg: 807) |
| Last Financial Statement Date: | 8/31/2023 |
| Net Worth: | Submitted Confidentially |
| Avg Trade Practices ('X') Reports: (past 6 months) | 3.50 (Industry Avg: 3.42) (scale: 1=poor, 4=excellent) |

### Business Snapshot:

| | |
|---|---|
| Business Start Date: | 1960 |
| Incorporation Date: | January 4, 1971 |
| Incorporated In: | Missouri |
| PACA License Number: | 19711239 |
| DRC License: | DRC Member |

### Business Ownership:

ESOP-Tom Lange Company, Inc., Parent, 100.00%
 Saint Louis, MO

# RATING HISTORY

**Current HQ Rating:**

15,000M XXXX(30)(40) B
(unchanged since 02/22/2021)
**Trading Member since 2005**

**HQ Rating Trend:**

| Reported Date: | New Rating: |
| --- | --- |
| 02/22/2021 | 15,000M XXXX(30)(40) B (current) |
| 11/23/2009 | 10,000M XXXX(30)(40) B |

**Rating Analysis:**

This business report includes trade experience information collected through Blue Book's proprietary trade survey methodology.  While this business report does not list details about how this company's pay practices are reported by industry creditors who submit their accounts receivable (A/R) data to Blue Book, all reported A/R information has been analyzed and supports this company's assigned rating.

For information about accessing A/R aging data as an A/R file contributor, contact a Blue Book Services Rating Analyst at 630.668.3500 or email ratings@bluebookservices.com.

**Current Rating Definitions:**

| | |
| --- | --- |
| 15,000M = | $15,000,000 est'd credit worth |
| XXXX = | Excellent |
| (30) = | Reported has transportation affiliation(s). |
| (40) = | Reported affiliated with one or more firms or individuals in the same line of business. |
| B = | 22 - 28 days on average |

For help understanding the Rating Definitions, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

*Business Report on Tom Lange Company, Inc.   BB #: 102175*

# BLUE BOOK SCORE HISTORY

For more information about Blue Book Scores, please review the appropriate reference material in the BBOS Learning Center's
Membership Guide.

**BBScore: 871**





| Industry Percentile | Subject Company Score | Industry Average |
|---|---|---|
| 73 | 871 | 807 |
| Subject company falls in the Low Risk Category | | |

*Note: Percentile is the value at or below which a percentage of data falls.*

# CLAIM ACTIVITY

| | | | | CLAIMS FILED WITH BLUE BOOK SERVICES | | |
|---|---|---|---|---|---|---|
| Date Filed | File ID | Open/Closed | Claim Amount | Issue | Status | Note |
| Last Activity | Claimant Type | | Meritorious | Description | | |
| 7/5/2023<br>11/9/2023 | 36118<br>Produce | Closed<br>11/9/2023 | $7,476.00<br>Yes | Dispute over whether product complied with sales agreement and resulting damages. | Blue Book review suggests payment past due and owing. | |
| 3/6/2023<br>6/6/2023 | 36004<br>Produce | Closed<br>5/19/2023 | $7,221.00 | Dispute over price-after-sale returns. | Paid in full (less interest and fees sought by Claimant). | |
| 9/13/2022<br>10/6/2022 | 35792<br>Transportation | Closed<br>10/6/2022 | $13,930.00 | Alleged unpaid invoices beyond terms. | Paid in full. | |
| 6/30/2022<br>11/7/2022 | 35713<br>Produce | Closed<br>11/4/2022 | $4,370.00 | Alleged unpaid invoice beyond terms. | Amicable settlement reached | |
| 1/31/2022<br>3/3/2022 | 35582<br>Produce | Closed<br>3/3/2022 | $5,544.00 | Alleged unpaid invoices beyond terms. | Paid in full. | |
| 10/12/2021<br>12/7/2021 | 35488<br>Transportation | Closed<br>12/1/2021 | $4,000.00 | Dispute whether transportation services complied with the agreement and/or resulting damages. | Amicable settlement reached. | |
| 6/30/2021<br>7/20/2021 | 35391<br>Produce | Closed<br>7/19/2021 | $1,438.35 | Dispute over whether product complied with sales agreement and resulting damages. | Amicable settlement reached. | |
| 10/20/2020<br>5/6/2021 | 35063<br>Produce | Closed<br>5/5/2021 | $18,400.00<br>Yes | Alleged unpaid invoices beyond terms. | Blue Book review suggests Respondent's failure to pay invoices not supported. | 8 |
| 9/5/2019<br>11/6/2019 | 34423<br>Produce | Closed<br>11/6/2019 | $8,645.00 | Alleged unpaid invoice beyond terms. | Paid in full. | 9 |
| 1/21/2019<br>5/7/2019 | 34101<br>Produce | Closed<br>5/7/2019 | $3,780.00 | Dispute over whether product complied with sales agreement and resulting damages. | Amicable settlement reached. | |

(8)   Claimant made a partial payment of $6,240.00.

(9)   Claim involves dispute over the quantity shipped.

| PACA REPARATION CASES | | | | |
|---|---|---|---|---|
| Informal Complaints | | | Formal Complaints | |
| No. of Informal Reparation Complaints | 3 | | No. of Formal Reparation Complaints | 0 |
| No. of Disputed Informal Reparation Complaints | 1 | | No. of Disputed Formal Reparation Complaints | 0 |
| | | | Total Claim Amount | $0.00 |

| LAWSUITS | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed | Case # | Court | Suit Type | Claim Amount | Case Status | Note |
| 6/12/2020 | 3:2020cv03147 | ilcdc | Agricultural Act | $66,581.00 | Complaint | |

## FINANCIAL INFORMATION

Please review the following for a complete list of Financial Statement Ratio definitions:  Ratio Definitions

Financial statements are submitted in confidence to be used for rating purposes only.  Specific figures are not quoted. The most recent financial statement provided by the company is a Year-End statement dated 08/31/2023.  How prepared: Internally Prepared.

## TRADE REPORT SUMMARY





## TRADE REPORT DETAILS

Trade practices ratings and pay descriptions (where appropriate) reflect the experience of those who have reported dealings with the subject company. Blue Book ratings are not based solely on trading experience report averages; rather, experienced rating and financial analysts also take into consideration other important factors such as the trend of trading experiences reported over time. If you have any questions about the Trade Report Summary or Trade Report Details in this Business Report, please contact the Blue Book Information & Service Center.  For definitions of symbols and terminology, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

| Reports From Produce References | | | | | |
|---|---|---|---|---|---|
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |
| 02/15/2024 | 7-12 Months | XXXX | | | |
| 02/14/2024 | 7-12 Months | XXXX | | | |
| 02/05/2024 | 1-6 Months | XXXX | 15-21 (A) | 50-75M | |
| 01/25/2024 | | XXX | | | |
| 01/25/2024 | 1-6 Months | XXX | | 250-500M | |
| 01/24/2024 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 01/24/2024 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 01/24/2024 | 1-6 Months | XXX | 29-35 (C) | 10-50M | |
| 01/24/2024 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 11/17/2023 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 10/16/2023 | 1-6 Months | XXXX | 1-14 (AA) | 5-10M | |
| 10/03/2023 | | XXX | 29-35 (C) | | |
| 10/02/2023 | 1-6 Months | XXXX | 15-21 (A) | 75-100M | |
| 10/02/2023 | 1-6 Months | XXXX | 15-21 (A) | 50-75M | |
| 10/02/2023 | | XXX | 22-28 (B) | 50-75M | |
| 10/02/2023 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 10/02/2023 | 1-6 Months | XXXX | 22-28 (B) | 5-10M | |
| 10/02/2023 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 10/02/2023 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 09/21/2023 | 1-6 Months | XXX | 15-21 (A) | 75-100M | |
| 08/07/2023 | 1-6 Months | XXXX | | | |
| 07/12/2023 | 1-6 Months | XXX | 29-35 (C) | 75-100M | |
| 06/30/2023 | 1-6 Months | XXX | 29-35 (C) | 100-250M | |
| 06/30/2023 | 1-6 Months | XXXX | 22-28 (B) | 50-75M | |
| 06/30/2023 | 1-6 Months | XXXX | 15-21 (A) | 75-100M | |
| 06/07/2023 | 7-12 Months | XXX | 15-21 (A) | 100-250M | |
| 05/18/2023 | | XXX | 29-35 (C) | | |
| 05/08/2023 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 05/08/2023 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 05/08/2023 | 7-12 Months | XXX | 22-28 (B) | | |
| 05/08/2023 | 1-6 Months | XXX | | | |
| 05/08/2023 | 1-6 Months | XXX | 29-35 (C) | 50-75M | |
| 05/05/2023 | 1-6 Months | XXXX | 29-35 (C) | 75-100M | |
| 05/05/2023 | 1-6 Months | XXXX | 22-28 (B) | 10-50M | |
| 05/05/2023 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 05/05/2023 | 1-6 Months | XXXX | 22-28 (B) | 50-75M | |
| 05/03/2023 | 1-6 Months | X | 60+ (F) | 5-10M | 10 Days |
| 04/10/2023 | 1-6 Months | XXX | 29-35 (C) | 75-100M | |
| 03/06/2023 | | XXXX | | | |
| 03/06/2023 | 1-6 Months | XXXX | | 5-10M | |
| 02/21/2023 (2) | | XXXX | 15-21 (A) | | |
| 02/21/2023 | | XXXX | 15-21 (A) | | |
| 02/07/2023 | 1-6 Months | XXX | | | |
| 02/06/2023 | 1-6 Months | XXX | 22-28 (B) | 500-1000M | |
| 02/03/2023 | | XXX | | | |
| 02/02/2023 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 01/23/2023 | 7-12 Months | XXXX | | | |
| 01/06/2023 | | XXXX | 15-21 (A) | 250-500M | |

| Reports From Produce References | | | | | |
|---|---|---|---|---|---|
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |
| 11/23/2022 | 1-6 Months | XXXX | 22-28 (B) | 250-500M | |
| 11/23/2022 | | XXX | 22-28 (B) | 75-100M | |
| 10/26/2022 | 1-6 Months | XXXX | 22-28 (B) | | |
| 10/19/2022    (1) | 1-6 Months | X | 22-28 (B) | 10-50M | |
| 10/19/2022 | 1-6 Months | X | 60+ (F) | 10-50M | |
| 10/10/2022 | 1-6 Months | XXXX | | 5-10M | |
| 10/06/2022 | 7-12 Months | XXX | 46-60 (E) | 100-250M | |
| 10/06/2022 | 1-6 Months | XXX | | | |
| 10/05/2022 | 1-6 Months | XXX | 15-21 (A) | 250-500M | |
| 10/05/2022 | 1-6 Months | XXXX | 22-28 (B) | 500-1000M | |
| 10/05/2022 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 10/05/2022 | 1-6 Months | XXXX | | | |
| 10/05/2022 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 10/05/2022 | 1-6 Months | XXXX | 15-21 (A) | 250-500M | |
| 10/05/2022 | | XXXX | | | |
| 10/05/2022 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 10/05/2022 | 1-6 Months | XXXX | | | |
| 10/05/2022 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 10/05/2022 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 10/05/2022 | | XXXX | 22-28 (B) | 75-100M | |
| 10/05/2022 | 1-6 Months | XXX | | | |
| 10/05/2022 | 7-12 Months | XXX | | | |
| 09/27/2022 | 1-6 Months | XXXX | 1-14 (AA) | Over 250M | |
| 09/05/2022 | | XXX | | | |
| 08/28/2022 | | XXX | | | |
| Reports From Transportation References | | | | | |
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |
| 03/06/2023 | 7-12 Months | XXX | | 50-75M | |
| Reports From Supply Firms | | | | | |
| **Report Date** | **Last Dealt** (in months) | **Trade Practices** | **Average Pay** (in days) | **High Credit** (in $) | **Credit Terms** (in days) |

(1)  Trade report applies to subject company's Houston, TX branch location, (BB # 105908).

(2)  Trade report applies to subject company's Pittsburgh, PA branch location, (BB # 120807).

# BUSINESS BACKGROUND

## Business Events

**January 4, 1971**    Subject company converted to a Corporation under Missouri law. Incorporated under Missouri state law as a C corporation..

**1960**    This company was established by Tom Lange.

# PEOPLE BACKGROUND

## Phil Gumpert, Chairman

| Date | Company | Title |
|---|---|---|
| 2012 - Current | Lange Logistics, Inc., Saint Louis, MO | Chairman |
| 2012 - Current | Seven Seas Fruit, Saint Louis, MO | Chairman |
| 2012 - Current | Tom Lange Company, Inc., Indianapolis, IN | Chairman |
| 2012 - Current | Tom Lange Company, Inc., Saint Louis, MO | Chairman |
| 2012 - 2022 | Lange Logistics, Inc., Saint Louis, MO | Chairman/CEO |
| 2012 - 2022 | Seven Seas Fruit, Saint Louis, MO | Chairman/CEO |
| 2012 - 2022 | Tom Lange Company, Inc., Indianapolis, IN | Chairman/CEO |
| 2012 - 2022 | Tom Lange Company, Inc., Saint Louis, MO | Chairman/CEO |
| 2007 - 2022 | Global Logistics & Transportation, Toronto, ON | Chairman |
| 2007 - 2022 | Global Logistics & Transportation, Toronto, ON | Chairman/CEO/President |
| 2012 - 2013 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO |
| 2008 - 2012 | Seven Seas Fruit, Saint Louis, MO | CEO |
| 2007 - 2012 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO/President |
| 2002 - 2012 | Lange Logistics, Inc., Saint Louis, MO | Chairman/CEO/President |
| 1998 - 2012 | Global Fresh Import and Export, Inc., Springfield, IL | Chairman/CEO/President |
| 1997 - 2012 | Tom Lange Company, Inc., Indianapolis, IN | Chairman/CEO/President |
| 1997 - 2012 | Tom Lange Company, Inc., Saint Louis, MO | Chairman/CEO/President |
| 2007 - 2011 | Beach Street Sales, Inc., Springfield, IL | Chairman/CEO/President |
| 1992 - 2011 | Lange Trading Company, Inc., Springfield, IL | Chairman/CEO/President |
| 2005 - 2007 | Beach Street Sales, Inc., Springfield, IL | Chairman/CEO |
| 1997 - 2007 | Global Logistics & Transportation, Toronto, ON | Chairman/CEO |
| 1982 - 2007 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO |
| 1997 - 2001 | TLC Marketing, Inc., Nogales, AZ | Chairman/CEO |
| 1997 - 1999 | Onions Marketing And Distributing, Inc. (OMD), Springfield, IL | Chairman/CEO |
| 1992 - 1998 | Lange Trading Company, Inc., Nogales, AZ | Chairman |
| 1994 - 1997 | Tom Lange Company, Inc., Saint Louis, MO | President |
| 1964 - 1997 | Tom Lange Company, Inc., Indianapolis, IN | Other |

*Business Report on Tom Lange Company, Inc.   BB #: 102175*

| Not Avail. | Global Logistics & Transportation, Toronto, ON | Other |
|---|---|---|
| 1964 - 1994 | Tom Lange Company, Inc., Saint Louis, MO | Secretary/Treasurer |

## Greg Reinauer, President/CEO

| Date | Company | Title |
|---|---|---|
| 2012 - Current | Lange Logistics, Inc., Saint Louis, MO | President/CEO |
| 2012 - Current | Seven Seas Fruit, Saint Louis, MO | President/CEO |
| 2012 - Current | Tom Lange Company, Inc., Saint Louis, MO | President/CEO |
| 2012 - 2022 | Lange Logistics, Inc., Saint Louis, MO | President |
| 2012 - 2022 | Seven Seas Fruit, Saint Louis, MO | President |
| 2012 - 2022 | Tom Lange Company, Inc., Saint Louis, MO | President |
| 2007 - 2012 | Amerifresh, Inc., Tempe, AZ | Sr. Vice President |
| Not Avail. | Amerifresh, Inc., Tempe, AZ | Vice President of Sales & Marketing |
| Not Avail. | Food Services of America, Inc., Seattle, WA | |

## Greg Thorne, CFO - TLCI

| Date | Company | Title |
|---|---|---|
| Not Avail. | Seven Seas Fruit, Saint Louis, MO | CFO - TLCI |
| Not Avail. | Seven Seas Fruit, Somerset West, South Africa, Repub. of | CFO - TLCI |
| Not Avail. | Tom Lange Company, Inc., Saint Louis, MO | CFO - TLCI |
| Not Avail. | Seven Seas Fruit, Poeldijk, Netherlands | CFO - TLCI |
| Not Avail. | Global Fresh Import and Export, Inc., Springfield, IL | CFO - TLCI |
| Not Avail. | Lange Logistics, Inc., Saint Louis, MO | CFO - TLCI |
| Not Avail. | Lange Trading Company, Inc., Springfield, IL | CFO - TLCI |

## Rebecca (Becky) Wilson, Vice President Operations

| Date | Company | Title |
|---|---|---|
| 2013 - Current | Lange Logistics, Inc., Saint Louis, MO | Vice President Operations |
| 2013 - Current | Seven Seas Fruit, Saint Louis, MO | Vice President Operations |
| 2013 - Current | Tom Lange Company, Inc., Saint Louis, MO | Vice President Operations |
| Not Avail. | Global Logistics & Transportation, Toronto, ON | Assistant Vice President |
| Not Avail. | Lange Logistics, Inc., Saint Louis, MO | Assistant Vice President |
| Not Avail. | Lange, Tom, Company, Inc., San Diego, CA | Assistant Vice President/Admin. |
| Not Avail. | Seven Seas Fruit, Saint Louis, MO | Assistant Vice President |
| Not Avail. | Tom Lange Company, Inc., Saint Louis, MO | Assistant Vice President |
| Not Avail. | Global Fresh Import and Export, Inc., Springfield, IL | Assistant Vice President |
| 1991 - 2011 | Lange Trading Company, Inc., Springfield, IL | Assistant Vice President |
| Not Avail. | Beach Street Sales, Inc., Springfield, IL | Assistant Vice President |

# BUSINESS PROFILE

**Method(s) of Operations:**

Distributor

Importer

Exporter

**Licenses:**

DRC Member

PACA License: 19711239

**Business Size:**

Annual truckloads: 30000

**Commodities:**

Fruit, Cranberry, Citrus, Strawberry, Peach, Apple, Pear, Cantaloupe, Grape, Watermelon, Vegetable, Cauliflower, Cabbage, Lettuce, Carrot, Potato, Seed Potatoes, Sweet Potato, Celery, Sweet Corn, Tomato, Deciduous Fruit, Stone Fruit, Avocado, Nectarine, Plum, Tropical Fruit, Melon, Onion, Onion, Squash, Cucumber, Pepper, Cherry Tomato

**Growing Characteristics:**

Organic

**Style Characteristics:**

Mixed

# AFFILIATIONS

An affiliation between entities exists when one entity owns all or a portion of another entity, or when a responsibly connected individual in one entity owns all or a portion of another entity, or that individual is a responsibly connected party in another entity.

| BB # 168459 | BB # 208581 | BB # 190767 |
|---|---|---|
| **Lange Logistics, Inc.** | **Seven Seas Fruit** | **Seven Seas Fruit** |
| Saint Louis, MO | Saint Louis, MO | Somerset West, South Africa, Repub. of |
| Transportation | Produce Buyer, Produce Seller | Produce Buyer, Produce Seller |
| (150) XXX(35) | (150) XXX(40) B | |

# BRANCHES

| | | |
|---|---|---|
| **BB # 280980**<br>**M & M Marketing Co.**<br>Saint Louis, MO<br>Produce Buyer, Produce Seller | **BB # 109278**<br>**Tom Lange Company, Inc.**<br>Atlanta, GA<br>Produce Buyer | **BB # 102905**<br>**Tom Lange Company, Inc.**<br>Chicago, IL<br>Produce Buyer |
| **BB # 108177**<br>**Tom Lange Company, Inc.**<br>Indianapolis, IN<br>Produce Buyer | **BB # 108194**<br>**Tom Lange Company, Inc.**<br>Oklahoma City, OK<br>Produce Buyer | **BB # 133617**<br>**Tom Lange Company, Inc.**<br>Philadelphia, PA<br>Produce Buyer |
| **BB # 120807**<br>**Tom Lange Company, Inc.**<br>Pittsburgh, PA<br>Produce Buyer | **BB # 123712**<br>**Tom Lange Company, Inc.**<br>Nashville, TN<br>Produce Buyer | **BB # 117438**<br>**Tom Lange Company, Inc.**<br>Dallas, TX<br>Produce Buyer |
| **BB # 105908**<br>**Tom Lange Company, Inc.**<br>Houston, TX<br>Produce Buyer | **BB # 169893**<br>**Tom Lange Company, Inc./Lakes Region Branch**<br>Gilford, NH<br>Produce Buyer | **BB # 166798**<br>**Tom Lange Company, Inc./Midwest Region**<br>Saint Louis, MO<br>Produce Buyer |

# Exhibit 5

BLUE BOOK SERVICES
845 E. GENEVA ROAD
CAROL STREAM, IL  60188
Phone 630 668-3500
FAX 630 668-0303
info@bluebookservices.com
www.bluebookservices.com

# BLUE BOOK SERVICES
## Business Report on Seven Seas Fruit
Information available through 02/28/2024



© 2024 Blue Book Services

This COMPLETE BUSINESS REPORT is provided to the subscriber under the terms of the Membership Agreement and is IN CONFIDENCE, for the subscriber's exclusive use, without recourse and without guarantee of correctness. Trade experience information may include disputed items, skipped invoices or other extenuating circumstances.

**BB # 208581**
**Seven Seas Fruit**
(a d/b/a of Tom Lange Co. International, Inc.)

500 N Broadway Ste 1360
Saint Louis, Missouri 63102-2110
USA
Phone: 314 934-2800
www.sevenseasfruit.com

### Alternate Trade Names / Banners:

SEVEN SEAS BERRY SALES

### Credit Snapshot:

| | |
|---|---|
| Current HQ Rating: | (150) XXX(40) B |
| Current Blue Book Score: | 859 (Industry Avg: 807) |
| Avg Trade Practices ('X') Reports: (past 6 months) | 3.45 (Industry Avg: 3.42) (scale: 1=poor, 4=excellent) |

### Business Snapshot:

| | |
|---|---|
| Incorporation Date: | March 13, 2008 |
| Incorporated In: | Illinois |
| PACA License Number: | 20080963 |
| DRC License: | DRC Member |

### Business Ownership:

BB #102175, Lange, Tom, Company, Inc., 100.00%
Saint Louis, MO
15,000M XXXX(30)(40) B

# RATING HISTORY

**Current HQ Rating:**

(150) XXX(40) B
 (unchanged since 02/26/2019)

**HQ Rating Trend:**

| Reported Date: | New Rating: |
|---|---|
| 02/26/2019 | (150) XXX(40) B (current) |
| 05/10/2018 | 750M XXX(40) B |
| 03/21/2017 | 500M XXX(40) B |
| 09/01/2015 | 400M XXX(40) B |

**Rating Analysis:**

This business report includes trade experience information collected through Blue Book's proprietary trade survey methodology.  While this business report does not list details about how this company's pay practices are reported by industry creditors who submit their accounts receivable (A/R) data to Blue Book, all reported A/R information has been analyzed and supports this company's assigned rating.

For information about accessing A/R aging data as an A/R file contributor, contact a Blue Book Services Rating Analyst at 630.668.3500 or email ratings@bluebookservices.com.

**Current Rating Definitions:**

| | |
|---|---|
| (150) = | Financial statement this subsidiary not made available. Parent company provides consolidated financial figures including subsidiaries. |
| XXX = | Good |
| (40) = | Reported affiliated with one or more firms or individuals in the same line of business. |
| B = | 22 - 28 days on average |

For help understanding the Rating Definitions, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

# BLUE BOOK SCORE HISTORY

For more information about Blue Book Scores, please review the appropriate reference material in the BBOS Learning Center's [Membership Guide](#).

## BBScore: 859



500    600    700    800    900    999

High Risk                                    Low Risk



**Blue Book Score Trend**

| Industry Percentile | Subject Company  Score | Industry Average |
|:---:|:---:|:---:|
| 67 | 859 | 807 |
| Subject company falls in the Low Risk Category | | |

*Note: Percentile is the value at or below which a percentage of data falls.*

# CLAIM ACTIVITY

| CLAIMS FILED WITH BLUE BOOK SERVICES | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed | File ID | Open/Closed | Claim Amount | Issue | Status | Note |
| Last Activity | Claimant Type | | Meritorious | Description | | |

| PACA REPARATION CASES | | | | |
|---|---|---|---|---|
| Informal Complaints | | Formal Complaints | | |
| No. of Informal Reparation Complaints | | No. of Formal Reparation Complaints | | |
| No. of Disputed Informal Reparation Complaints | | No. of Disputed Formal Reparation Complaints | | |
| | | Total Claim Amount | | |

| LAWSUITS | | | | | | |
|---|---|---|---|---|---|---|
| Date Filed | Case # | Court | Suit Type | Claim Amount | Case Status | Note |
| 6/12/2020 | 3:2020cv03147 | ilcdc | Agricultural Act | $66,581.00 | Case Closed | |

# FINANCIAL INFORMATION

The following are derived from the parent company's consolidated financial statement, which includes other subsidiaries. They are presented as a matter of information, and a credit worth rating is not assigned to this subsidiary.

Please review the following for a complete list of Financial Statement Ratio definitions:   Ratio Definitions

Financial statements are submitted in confidence to be used for rating purposes only.  Specific figures are not quoted. The most recent financial statement provided by the company is a Year-End statement dated 08/31/2023.  How prepared: Internally Prepared.

Financial statement this subsidiary not made available. Parent company provides consolidated figures including subsidiaries.

# TRADE REPORT SUMMARY





# TRADE REPORT DETAILS

Trade practices ratings and pay descriptions (where appropriate) reflect the experience of those who have reported dealings with the subject company. Blue Book ratings are not based solely on trading experience report averages; rather, experienced rating and financial analysts also take into consideration other important factors such as the trend of trading experiences reported over time. If you have any questions about the Trade Report Summary or Trade Report Details in this Business Report, please contact the Blue Book Information & Service Center.  For definitions of symbols and terminology, please review the appropriate reference material in the BBOS Learning Center's Membership Guide.

*Business Report on Seven Seas Fruit   BB #: 208581*

| Reports From Produce References | | | | | |
|---|---|---|---|---|---|
| **Report Date** | **Last Dealt**<br>**(in months)** | **Trade Practices** | **Average Pay**<br>**(in days)** | **High Credit**<br>**(in $)** | **Credit Terms**<br>**(in days)** |
| 02/07/2024 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 02/05/2024 | 1-6 Months | XXXX | | | |
| 02/04/2024 | | XXX | | | |
| 12/06/2023 | 1-6 Months | XXXX | | | |
| 12/05/2023 | | XXX | | | |
| 11/06/2023 | 1-6 Months | XXXX | | | |
| 10/12/2023        (1) | 1-6 Months | XX | 46-60 (E) | 50-75M | 10 Days |
| 10/10/2023 | | XXX | | | |
| 10/10/2023 | 1-6 Months | XXXX | 15-21 (A) | 100-250M | |
| 10/09/2023 | 1-6 Months | XXX | | | |
| 10/09/2023 | 1-6 Months | XXX | 22-28 (B) | 50-75M | |
| 09/20/2023 | 1-6 Months | XXXX | | | |
| 08/07/2023 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 08/07/2023 | 1-6 Months | XXXX | | | |
| 07/10/2023 | 1-6 Months | XXXX | 15-21 (A) | Over 1 million | |
| 06/12/2023 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 06/12/2023 | 1-6 Months | XXXX | | | |
| 05/08/2023 | 7-12 Months | XXXX | | | |
| 05/08/2023 | 1-6 Months | XXXX | 22-28 (B) | 100-250M | |
| 04/11/2023 | | XXX | | | |
| 04/10/2023 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 04/01/2023 | 1-6 Months | XXX | 22-28 (B) | 5-10M | |
| 03/07/2023 | 1-6 Months | XXXX | | | |
| 03/07/2023 | 1-6 Months | XXXX | | | |
| 03/06/2023 | 1-6 Months | XXXX | | | |
| 03/06/2023 | 1-6 Months | XXX | | | |
| 03/06/2023 | | XXXX | | | |
| 03/06/2023 | 1-6 Months | XXXX | 15-21 (A) | 100-250M | |
| 01/31/2023        (1) | 1-6 Months | XX | 36-45 (D) | | |
| 12/14/2022 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 12/05/2022 | 1-6 Months | XXX | 22-28 (B) | 75-100M | |
| 11/16/2022 | 1-6 Months | XXX | | | |
| 11/07/2022 | | XXX | | | |
| 11/07/2022 | 1-6 Months | XXX | 22-28 (B) | 10-50M | |
| 10/17/2022 | | XXXX | | | |
| 10/12/2022 | | XXXX | | | |
| 10/12/2022 | 1-6 Months | XXXX | | | |
| 10/10/2022 | 1-6 Months | XXXX | | | |
| 10/10/2022 | 1-6 Months | XXX | 22-28 (B) | 100-250M | |
| 10/10/2022 | 1-6 Months | XXX | 22-28 (B) | Over 1 million | |
| 10/10/2022 | 1-6 Months | XXXX | 1-14 (AA) | 5-10M | |
| 10/05/2022 | | | 22-28 (B) | | |
| 09/19/2022 | 1-6 Months | XXXX | | | |
| 09/19/2022 | | XXXX | | | |
| **Reports From Transportation References** | | | | | |
| **Report Date** | **Last Dealt**<br>**(in months)** | **Trade Practices** | **Average Pay**<br>**(in days)** | **High Credit**<br>**(in $)** | **Credit Terms**<br>**(in days)** |
| **Reports From Supply Firms** | | | | | |
| **Report Date** | **Last Dealt**<br>**(in months)** | **Trade Practices** | **Average Pay**<br>**(in days)** | **High Credit**<br>**(in $)** | **Credit Terms**<br>**(in days)** |

(1)    Trade report applies to subject company's Pompano Beach, FL branch location, (BB # 156578).

# BUSINESS BACKGROUND

## Business Events

**March 13, 2008**    Subject company was established as a Sub Chapter S Corporation under Illinois law.

---

# PEOPLE BACKGROUND

## Phil Gumpert, Chairman

| Date | Company | Title |
|---|---|---|
| 2012 - Current | Lange Logistics, Inc., Saint Louis, MO | Chairman |
| 2012 - Current | Seven Seas Fruit, Saint Louis, MO | Chairman |
| 2012 - Current | Tom Lange Company, Inc., Indianapolis, IN | Chairman |
| 2012 - Current | Tom Lange Company, Inc., Saint Louis, MO | Chairman |
| 2012 - 2022 | Lange Logistics, Inc., Saint Louis, MO | Chairman/CEO |
| 2012 - 2022 | Seven Seas Fruit, Saint Louis, MO | Chairman/CEO |
| 2012 - 2022 | Tom Lange Company, Inc., Indianapolis, IN | Chairman/CEO |
| 2012 - 2022 | Tom Lange Company, Inc., Saint Louis, MO | Chairman/CEO |
| 2007 - 2022 | Global Logistics & Transportation, Toronto, ON | Chairman |
| 2007 - 2022 | Global Logistics & Transportation, Toronto, ON | Chairman/CEO/President |
| 2012 - 2013 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO |
| 2008 - 2012 | Seven Seas Fruit, Saint Louis, MO | CEO |
| 2007 - 2012 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO/President |
| 2002 - 2012 | Lange Logistics, Inc., Saint Louis, MO | Chairman/CEO/President |
| 1998 - 2012 | Global Fresh Import and Export, Inc., Springfield, IL | Chairman/CEO/President |
| 1997 - 2012 | Tom Lange Company, Inc., Indianapolis, IN | Chairman/CEO/President |
| 1997 - 2012 | Tom Lange Company, Inc., Saint Louis, MO | Chairman/CEO/President |
| 2007 - 2011 | Beach Street Sales, Inc., Springfield, IL | Chairman/CEO/President |
| 1992 - 2011 | Lange Trading Company, Inc., Springfield, IL | Chairman/CEO/President |
| 2005 - 2007 | Beach Street Sales, Inc., Springfield, IL | Chairman/CEO |
| 1997 - 2007 | Global Logistics & Transportation, Toronto, ON | Chairman/CEO |

*Business Report on Seven Seas Fruit*  BB #: 208581

| 1982 - 2007 | Lange, Tom, Company, Inc., San Diego, CA | Chairman/CEO |
| 1997 - 2001 | TLC Marketing, Inc., Nogales, AZ | Chairman/CEO |
| 1997 - 1999 | Onions Marketing And Distributing, Inc. (OMD), Springfield, IL | Chairman/CEO |
| 1992 - 1998 | Lange Trading Company, Inc., Nogales, AZ | Chairman |
| 1994 - 1997 | Tom Lange Company, Inc., Saint Louis, MO | President |
| 1964 - 1997 | Tom Lange Company, Inc., Indianapolis, IN | Other |
| Not Avail. | Global Logistics & Transportation, Toronto, ON | Other |
| 1964 - 1994 | Tom Lange Company, Inc., Saint Louis, MO | Secretary/Treasurer |

## Greg Reinauer, President/CEO

| Date | Company | Title |
| --- | --- | --- |
| 2012 - Current | Lange Logistics, Inc., Saint Louis, MO | President/CEO |
| 2012 - Current | Seven Seas Fruit, Saint Louis, MO | President/CEO |
| 2012 - Current | Tom Lange Company, Inc., Saint Louis, MO | President/CEO |
| 2012 - 2022 | Lange Logistics, Inc., Saint Louis, MO | President |
| 2012 - 2022 | Seven Seas Fruit, Saint Louis, MO | President |
| 2012 - 2022 | Tom Lange Company, Inc., Saint Louis, MO | President |
| 2007 - 2012 | Amerifresh, Inc., Tempe, AZ | Sr. Vice President |
| Not Avail. | Amerifresh, Inc., Tempe, AZ | Vice President of Sales & Marketing |
| Not Avail. | Food Services of America, Inc., Seattle, WA | |

## Rebecca (Becky) Wilson, Vice President Operations

| Date | Company | Title |
|---|---|---|
| 2013 - Current | Lange Logistics, Inc., Saint Louis, MO | Vice President Operations |
| 2013 - Current | Seven Seas Fruit, Saint Louis, MO | Vice President Operations |
| 2013 - Current | Tom Lange Company, Inc., Saint Louis, MO | Vice President Operations |
| Not Avail. | Global Logistics & Transportation, Toronto, ON | Assistant Vice President |
| Not Avail. | Lange Logistics, Inc., Saint Louis, MO | Assistant Vice President |
| Not Avail. | Lange, Tom, Company, Inc., San Diego, CA | Assistant Vice President/Admin. |
| Not Avail. | Seven Seas Fruit, Saint Louis, MO | Assistant Vice President |
| Not Avail. | Tom Lange Company, Inc., Saint Louis, MO | Assistant Vice President |
| Not Avail. | Global Fresh Import and Export, Inc., Springfield, IL | Assistant Vice President |
| 1991 - 2011 | Lange Trading Company, Inc., Springfield, IL | Assistant Vice President |
| Not Avail. | Beach Street Sales, Inc., Springfield, IL | Assistant Vice President |

# BUSINESS PROFILE

**Method(s) of Operations:**

Importer

Distributor

Exporter

**Commodities:**

Fruit, Citrus, Stone Fruit, Tropical Fruit, Vegetable, Blueberry, Grapefruit, Grapefruit, Lemon, Lemon, Lime, Lime, Mandarin, Mandarin, Orange, Orange, Minneola Orange, Minneola Orange, Tangerine, Tangerine, Strawberry, Cherry, Mango, Apple, Banana, Pear, Kiwifruit, Grape, Clementine Mandarin

**Licenses:**

DRC Member

PACA License: 20080963

**Brands:**

SEVEN SEAS, HONEYSUCKLE, VIOLET'S CHOICE

# AFFILIATIONS

An affiliation between entities exists when one entity owns all or a portion of another entity, or when a responsibly connected individual in one entity owns all or a portion of another entity, or that individual is a responsibly connected party in another entity.

| **BB # 168459** | **BB # 108177** | **BB # 102175** |
|---|---|---|
| **Lange Logistics, Inc.** | **Tom Lange Company, Inc.** | **Tom Lange Company, Inc.** |
| Saint Louis, MO | Indianapolis, IN | Saint Louis, MO |
| Transportation | Produce Buyer | Produce Buyer, Produce Seller |
| (150) XXX(35) | | 15,000M XXXX(30)(40) B |
| | | Trading Member since 2005 |
| **BB # 166798** | | |
| **Tom Lange Company, Inc./Midwest Region** | | |
| Saint Louis, MO | | |
| Produce Buyer | | |

# BRANCHES

| **BB # 155082** | **BB # 190767** | **BB # 156578** |
|---|---|---|
| **Seven Seas Berries** | **Seven Seas Fruit** | **Seven Seas Fruit** |
| Watsonville, CA | Somerset West, South Africa, Repub. of | Pompano Beach, FL |
| Produce Buyer, Produce Seller | Produce Buyer, Produce Seller | Produce Buyer, Produce Seller |
| **BB # 288214** | **BB # 209182** | |
| **Seven Seas Fruit** | **Seven Seas Fruit** | |
| Vero Beach, FL | Iselin, NJ | |
| Produce Buyer, Produce Seller | Produce Buyer, Produce Seller | |